**Charles J. THORNTON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19664.**

United States Court of Appeals
District of Columbia Circuit.

Submitted April 28, 1966.

Decided Oct. 6, 1966.

J. Skelly Wright, Circuit Judge, dissented.

Mr. Henry J. Karison, Washington, D. C. (appointed by this court), submitted on the brief for appellant.

Mr. Michael R. Sonnenreich, Atty., Dept. of Justice, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Earl J. Silbert, Asst. U. S.

Attys., were on the brief, submitted on the brief for appellee.

Before BASTIAN, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

■ In this case we are asked to reconsider our doctrine [1] that ordinarily a claim of illegal search and seizure may not be raised collaterally under 28 U.S.C. § 2255. Our prior holdings (supra, note 1) are in accord with the opinions of most of the other circuits, which have ruled that collateral review is not available, either on the law or by way of evidentiary hearing.[2] However, there have been recent statements to the contrary—technically in dicta—in circuit opinions [3] based on views believed to be inherent in and required by recent Supreme Court opinions. Accordingly we have reexamined our earlier position. We confirm that generally a claim by a federal prisoner that evidence admitted at his trial was the fruit of an unconstitutional search or seizure is not properly the ground of a collateral attack on his conviction. As further noted below, this rule is subject to an exception for special circumstances which are not present in this case.

On June 1, 1960, appellant Charles J. Thornton was arrested at his home by Federal narcotics agents. After indictment on thirty-seven counts of conspiracy and substantive violations of the drug laws, he and four co-defendants were tried and found guilty on all counts. Appellant was sentenced on January 1, 1961, to eighteen years in prison, but this term was later reduced to the eight year confinement he is presently serving. An appeal was taken from the judgments of conviction, and in the course of a brief of over eighty pages, eleven major grounds for reversal were urged. Although this court found errors as to two of the defendants, appellant's conviction was affirmed, sub nom. Brown v. United States, 112 U.S.App.D.C. 57, 299 F.2d 438 (1962). Certiorari was denied. 370 U.S. 946, 82 S.Ct. 1593, 8 L.Ed.2d 812 (1962).

In the intervening years, appellant filed several motions and petitions, seeking various kinds of relief on numerous grounds. The present proceeding began when, on January 18, 1965, he filed a motion under 28 U.S.C. § 2255 to vacate or set aside his sentence, alleging first that evidence illegally obtained by the arresting officers had been admitted at his trial, in contravention of the Fourth Amendment; and, second, that trial counsel neglected to file a pre-trial motion to suppress the purportedly unconstitutionally seized evidence, and this constituted ineffective assistance of counsel, violative of the Sixth Amendment.[4]

The District Court appointed counsel and held an evidentiary hearing at which

---

1. *E.g.*, Plummer v. United States, 104 U.S.App.D.C. 211, 260 F.2d 729 (1958); Jones v. United States, 103 U.S.App.D.C. 326, 258 F.2d 420, cert. denied, 357 U.S. 932, 78 S.Ct. 1377, 2 L.Ed.2d 1374 (1958); Edwards v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707, cert. denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed. 2d 82 (1958); Wilkins v. United States, 103 U.S.App.D.C. 322, 258 F.2d 416, cert. denied, 357 U.S. 942, 78 S.Ct. 1396, 2 L. Ed.2d 1557 (1958); White v. United States, 98 U.S.App.D.C. 274, 235 F.2d 221 (1956).

2. *E.g.*, United States v. De Fillo, 182 F. Supp. 782 (S.D.N.Y.1959), aff'd per curiam on opinion below, 277 F.2d 162 (2d Cir. 1960); United States v. Jenkins, 281 F.2d 193 (3d Cir. 1960); Nash v. United States, 342 F.2d 366 (5th Cir. 1965); Armstead v. United States, 318 F.2d 725

(5th Cir. 1963); Eisner v. United States, 351 F.2d 55 (6th Cir. 1965); Thompson v. United States, 315 F.2d 689 (6th Cir.), cert. denied, 375 U.S. 843, 84 S.Ct. 93, 11 L.Ed.2d 70 (1963); Kapsalis v. United States, 345 F.2d 392 (7th Cir.), cert. denied, 382 U.S. 946, 86 S.Ct. 406, 15 L. Ed.2d 354 (1965); Sinks v. United States, 318 F.2d 436 (7th Cir.), cert. denied, 375 U.S. 946, 84 S.Ct. 355, 11 L.Ed.2d 279 (1963); Cox v. United States, 351 F.2d 280 (8th Cir. 1965); Warren v. United States, 311 F.2d 673 (8th Cir. 1963); Williams v. United States, 307 F.2d 366 (9th Cir. 1962).

3. United States v. Sutton, 321 F.2d 221 (4th Cir. 1963); Gaitan v. United States, 317 F.2d 494 (10th Cir. 1963).

4. At the hearing appellant abandoned the claim that he never received a prelim-

appellant was permitted to testify. Because of the intimate relationship between the illegal search and inadequate counsel points the court allowed counsel to probe the circumstances of the arrest and search without ruling whether this kind of issue might properly be raised on a Section 2255 motion. Appellant testified that he was awakened at 4:30 A.M. on June 1, 1960, by a loud rapping at his front door. While he arose to answer the knock, he heard someone "busting" or "kicking" in the porch door. When he opened the door, his visitors identified themselves as federal officers and claimed they had a warrant for his arrest. They were invited in, and proceeded to search appellant and his apartment. In the course of their examination, they discovered and seized personal effects, and in addition an address book and a slip of paper linking appellant to some of his co-defendants. The admission of these two items in evidence at the trial is the basis of appellant's Fourth Amendment claim. The Government did not cross-examine appellant on the circumstances of the arrest.

On the issue of ineffective assistance of counsel, appellant testified that his counsel had not queried him about the details of the arrest, and despite assurances that he would recover appellant's personal effects made no motion to that end. Appellant admitted that he might not have requested his counsel to recover the address book and slip of paper, or mentioned their incriminating potential.

█ Appellant's former counsel, called to the stand, had no recollection of the details of the consultations and proceedings of five years ago. The court and the parties agreed to let the record speak for itself. The transcript of the original trial revealed that counsel for the co-de-fendants did most of the questioning; that although the suppression motion was not made by appellant's lawyer, yet that attorney concurred in the motion of counsel for co-defendants, who indeed served as lead counsel during the entire trial. The court held that the failure to file an independent motion in appellant's behalf to suppress the evidence in question did not under the circumstances amount to a constitutional inadequacy of counsel. We affirm this ruling, and do not consider the point to require further discussion.

Insofar as the motion rested on the unreasonableness of the search and seizure, it was denied with a ruling by the court that as a matter of law the admission in evidence of the fruits of an illegal arrest, search, or seizure cannot serve as the basis of a motion under § 2255.

█ The extent of relief and review available on a § 2255 motion is the same as that open to a petitioner seeking vindication of his rights by the habeas corpus route.[5] The only difference is that Congress enacted § 2255 in the 1948 Judicial Code in order to provide a less cumbersome remedy, through consideration by the sentencing court rather than the district of confinement. United States v. Hayman, 342 U.S. 205, 219, 72 S.Ct. 263, 96 L.Ed. 232 (1952); Hill v. United States, 368 U.S. 424, 427–428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

██ Many opinions declare that collateral attack, as by habeas corpus, is available to correct the denial of a constitutional right.[6] This is the general rule but it is not an absolute. These expressions do not obliterate the doctrine that the normal and customary method of correcting trial errors, even as to constitutional questions, is by appeal, and that habeas corpus cannot serve as a substitute for the regular judicial process of trial and appeal in the absence of cir-

---

inary hearing before a United States Commissioner, and was thus not accorded due process of law.

5. A federal prisoner may not seek habeas if a motion to the sentencing court is "authorized." 28 U.S.C. § 2255, ¶ 7 (1964).

6. See, e.g., Fay v. Noia, 372 U.S. 391, 409, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Hawk v. Olson, 326 U.S. 271, 274, 66 S.Ct. 116, 90 L.Ed. 61 (1945).

cumstances indicating collateral attack is needed to provide an effective means of preserving constitutional rights. Sunal v. Large, 332 U.S. 174, 179–180, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); Waley v. Johnston, 316 U.S. 101, 104–105, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); United States v. Sobell, 314 F.2d 314, 321–323 (2d Cir.) cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963).

■■ As noted in Smith v. United States, 88 U.S.App.D.C. 80, 85, 187 F.2d 192, 197 (1950), cert. denied, 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358 (1951): "Where the alleged error of the trial court is in the admission of evidence subject to correction on appeal, and there is representation by counsel, habeas corpus is not the appropriate remedy." Collateral review is available, however, for the denial of a constitutional right accompanied by "weakness in the judicial process which has resulted in the conviction", such as lack of counsel, perjury undiscovered, mob domination, etc. Id. at 86, 187 F.2d at 198.

■ Whether collateral attack is permissible depends on the nature of the constitutional claim, the effectiveness of the direct remedies, and the need for choices among competing considerations in quest of the ultimate goal of achievement of justice. The decision is not predetermined by the absolute availability of judicial power, but reflects the need to fathom and delineate the claims and circumstances that make the exercise of power appropriate.[7] The courts are called on to evolve and provide procedures and remedies that are effective to vindicate constitutional rights. However, where effective procedures are available in the direct proceeding, there is no imperative to provide an additional, collateral review, leaving no stone unturned, when exploration of all avenues of justice at the behest of individual petitioners may impair judicial administration of the federal courts, as by making criminal litigation interminable, and diverting resources of the federal judiciary. Sunal v. Large, supra, 332 U.S. at 182, 67 S.Ct. 1588.

■ Our rejection of the availability of collateral review for claims of unreasonable search and seizure (in the absence of exceptional circumstances) is not attributable to a low regard for the significance of the Fourth Amendment in our times and civilization. On the contrary, the magnitude of the Fourth Amendment in our constitutional constellation has prompted unusual remedies by Congress, as well as the courts. For more than fifty years, evidence secured by unconstitutional means has been held inadmissible at trial.[8] Exclusion at trial was supplemented, not in time but in effectiveness, by unusual remedies permitting pre-trial suppression of the items unlawfully seized. These remedies were developed both through the power of equity to forestall injury, and through a dynamic jurisdiction built on an inherent supervisory authority over the prosecution, an authority construed to embrace not only the attorney in court but to reach back to the previous activity of the enforcement agents underlying the prosecution. This judicial fountainhead of authority is now crystallized in and survives Rule 41(e) of the Federal Rules of Criminal Procedure. Smith v. Katzenbach, 122 U.S.App.D.C. 113, 117–119, 351 F.2d 810, 814–816 (1965).

Thus the diligence and dynamism of the federal courts have provided remedies to maximize protection of these particular constitutional rights. Remedies are available not only during the trial, but at its commencement and indeed prior to the inception of the trial and if need be the indictment. The corollary, however, is a contraction of the need for enlarging collateral review in order to assure effective vindication of the constitutional interests involved.

At the same time it becomes appropriate to consider the substantial disadvantages of collateral review in terms of judicial administration. First in time

7. Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455 (1939).

8. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

there is the reasonable anticipation of a larger number of hearings on petitions that will prove to be insubstantial in fact. We would resolutely breast a flood of frivolity to rescue the stray meritorious claim if that were needed for effective vindication of constitutional protection, and there were no comprehensive procedure available at and before trial. Compare Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Here as already observed that effort is not required to vindicate the rights involved, and on the contrary this use of the courts would defer other cases that do present substantial claims and calls on judicial time.[9] Second is the difficulty of belated determinations. The ascertainment of what constituted "probable cause," typically a subtle and indeed elusive question, is made incomparably more difficult and often artificial as recollections dim and witnesses are unavailable.[10] The difficulty is not eradicated by noting that the accused would have the burden of proof. The narration of the events which he now provides, after protracted and intense rumination, may unwarrantedly overshadow the cloudy recall of officers for whom this was but one case among hundreds. When the inquiry is made at trial or seasonably ordered on direct appeal, there is enough proximity to the problem to permit at least the probability of a searching inquiry. But postpone the adjudication until some collateral proceeding years

hence and the examination is likely to be phantasmic. See generally Linkletter v. Walker, 381 U.S. 618, 637, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Hodges v. United States, 108 U.S.App.D.C. 375, 377, 282 F.2d 858, 860 (1960) (en banc), cert. dismissed, 368 U.S. 139, 82 S.Ct. 235, 7 L.Ed.2d 184 (1961). Last but by no means least is the fact that the court can take timely corrective action without jettisoning the trial if a valid search and seizure claim is presented at or before trial. But if the claim were entertained on collateral attack it would not only scrap the completed trial but also, taking into account the possible subsequent unavailability of witnesses present or available at the original trial, might well imperil the public interest in securing a just conviction.

Courts should be reluctant to let general considerations of administration require injustice in the particular case. That reluctance is overcome by the weighty consideration, diluting the fear of particular injustice, that the claim of unreasonable search and seizure does not weaken the probative value of the evidence against the accused. It is partly because the rule of exclusion is not a truth-protecting device that the Supreme Court decreed last year that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961), would be given only prospective effect in State convictions. Linkletter v. Walker, *supra.* Collateral attack is negatived not only by the rule

9. For a recent article commenting on the difficulty faced by Federal courts in keeping up with the volume of judicial business, see Wright, *The Federal Courts —A Century After Appomattox*, 52 A.B. A.J. 742, 743 (1966).

  We appreciate that the administrative considerations outlined in this paragraph apply to collateral review generally, and specifically indeed to collateral attack on this ground of ineffective assistance of counsel, which may be intertwined with a search and seizure contention. But as this case illustrates the evidence as well as the determination may be different when the court is considering only ineffective assistance of counsel; here, for example, there was no need to call the arresting officers as witnesses. The

heavy burden resting on the appellant claiming ineffective assistance of counsel is not likely to be ignored. Hence ineffective assistance of counsel is not likely to be tolerated as a backdoor for arguing search and seizure claims. In any event the balancing of interests involved leads to different conclusions as to availability of collateral review for these different contentions.

10. There is a corresponding "increased difficulty of proving perjury" when testimony about the disputed event comes years afterward. See Wright & Sofaer, *Federal Habeas Corpus for State Prisoners: The Allocation of Fact-Finding Responsibility*, 75 YALE L.J. 895, 920–21 (1966).

against retrospectivity, which is relevant but not controlling, but by the consideration that collateral attack would be of little if any weight in achieving the pattern of lawful conduct by enforcement officials which is the objective of the exclusionary rule. Enforcement officials know that evidence unreasonably seized is subject to exclusion by resort to a variety of motions. There is no basis for supposing that their conduct will be substantially influenced by the additional possibility of an inquiry years hence.[11] Compare Amsterdam, *Search, Seizure, and Section 2255: A Comment*, 112 U.Pa. L.Rev. 378, 389–90 (1964), who suggests that additional deterrence, if any, has passed the point of diminishing returns, and inflicts disproportionate harm on the public interest in confinement and rehabilitation of wrongdoers. That courts will not pursue *ad infinitum* the objective of deterring a blundering constabulary is vividly illustrated by the rule that prohibits an accused from objecting to evidence obtained by the unreasonable search of another, so long as his own property or privacy was not disturbed, even though the evidence incriminates him and may be a critical ingredient in the prosecution's case against him. Wong Sun v. United States, 371 U.S. 471, 491–492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In our view the rule here applied is fully consonant with the spirit as well as holdings of recent Supreme Court decisions. Nothing in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed. 2d 148 (1963), points in the opposite direction. The Court there merely reconfirmed the principle that notions of *res judicata* have no bearing on habeas or § 2255 inquiries. Therefore the fact that a point was not raised in the first collateral petition is no bar to later consideration. Accordingly if a point could have been considered if it had been presented in the first collateral motion or petition, its omission from the first petition is not by itself a bar to its consideration in a subsequent application. Here, however, the type of error is one, we think, that is not appropriate for consideration in any § 2255 motion.

One Circuit has focused on a reference in Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), that an error was "neither jurisdictional nor constitutional," as a declaration that a claimed violation of any constitutional right is subject to collateral review under § 2255. See United States v. Sutton, 321 F.2d 221, 222 (4th Cir. 1963). We do not interpret this isolated remark in *Hill* to reflect a radical extension of relief under § 2255. It is noteworthy that this phrase was immediately qualified by the more traditional standard, when the Court noted that the deficiency was not "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." 368 U.S. at 428, 82 S.Ct. at 471.

Nor is our result contrary to the recent Supreme Court opinions markedly extending the power of federal courts to inquire by habeas corpus into the validity of state convictions assailed on the ground that federal constitutional rights have been violated. See, *e. g.*, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). We assume for present purposes that federal habeas corpus will lie, at least to some extent, to consider the claim of a state prisoner that he was convicted on the basis of the fruits of an unconstitutional search and seizure. Compare Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). We do not read these cases, however, as portending a change by which federal convictions would be laid vulnerable to collateral attack. Rather they recognize a different and fundamental concern, and

---

11. If it is hypothesized that an officer might be ready to cope with an inquiry at trial but unwilling to grapple with a post-trial hearing when his memory has dimmed, that would suggest he might be likewise deterred by such prospect from making even searches and seizures he considers reasonable.

reflect the principle that except in the most flagrant cases of waiver or default, such as "deliberate bypassing" of the state forum, a state prisoner is entitled to a federal forum on his federal constitutional claims. The significance of fact finding in a federal forum on the all-important constitutional facts has resulted in the unique, and at first encounter startling, consequence that federal collateral review is apparently preferred over direct appeal (to the Supreme Court) as providing optimum federal judicial consideration.[12] In any event, the recent decisions broadening collateral review as an assurance of the federal judicial process to state accused afford no comparable collateral machinery to federal prisoners who have already had access to the federal judicial process: access to a federal trial judge—indeed under § 2255 to the same federal judge if available; access to an array of effective federal remedies for rooting out the fruits of unreasonable searches; and access to the federal appellate system.

The exceptional circumstances that may warrant reference to § 2255 for the claim of unconstitutional search and seizure would include instances of "weakness in the [Federal] judicial process which resulted in the conviction." Smith v. United States, *supra*. Such instances would include claims of ineffective assistance of counsel resulting in a denial of Sixth Amendment rights. The proper limits of such a claim need not be defined here. It suffices that the Sixth Amendment claim by appellant has not prevailed.[13] We do not undertake to consider what other "exceptional circumstances" may warrant an evidentiary hearing in a collateral review based on unreasonable search or seizure.[14] In this case there was access to the federal court system, no showing of ineffective assistance of counsel, and no other allegations indicating that appellant was frustrated from presentation of the claim of unreasonable search or seizure at or before trial. We see no exceptional circumstances leading us to stretch an exception to the general rule against collateral review.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

This appeal from denial of a motion under 28 U.S.C. § 2255 presents two questions. The first, whether counsel at Thornton's trial was ineffective, is easily disposed of. It is based almost entirely

---

12. The exaltation of collateral review reflects the disadvantages in direct federal appeal from state courts—practical limitations on shaping and review of the factual record, as well as the Supreme Court's staggering case load.

As to the need that a federal court be involved in the details of discovery and determination of "constitutional facts," it has been suggested that it is because state courts have not adequately performed their role that the Supreme Court has called upon the federal district courts as a back-stop for the vindication of federal rights. See Wright and Sofaer, *supra* note 10, at 898, quoting Professor Bator's "thoughtful comment on why federal judges may be better suited to pass on federal issues." Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners.* 76 HARV.L.REV. 441, 510 (1963).

It may be noted that at the state trial of Billie Sol Estes the judge, in rejecting defendant's claim that his rights under the Federal Constitution were being violated, remarked that the case was "not being tried under the Federal Constitution." Estes v. State of Texas, 381 U.S. 532, 556, 85 S.Ct. 1628, 1639, 14 L.Ed.2d 543 (1965) (Warren, C. J., concurring). The Supreme Court may be concerned that other state judges, though not saying so overtly, likewise fail to provide an understanding and objective consideration of Federal constitutional claims.

13. Appellant does not contend that the failure to appeal the denial of the suppression motion establishes ineffective assistance of counsel. We examined the record on the original appeal, and found a number of substantial points ably presented. Of course even a strong point at trial may be weak on appeal if the issue is one of fact and there is evidence both ways.

14. See Amsterdam, *supra*, at 391 n. 60.

on counsel's failure to make a pre-trial motion to suppress certain evidence. The fact is that counsel for Thornton joined with counsel for other defendants in the case in their motion at the trial to suppress the evidence in question. Counsel's failure to make his own motion to suppress before trial provides no basis in this case for a claim of ineffective representation.

The second question is whether the District Court was correct in ruling that 28 U.S.C. § 2255 is unavailable to determine whether evidence introduced at a trial was unlawfully obtained. The law in this circuit and in most other circuits has long been that the claim is not cognizable. *E. g.,* Warren v. United States, 8 Cir., 311 F.2d 673 (1963); Thomas v. United States, 7 Cir., 308 F.2d 369 (1962); Edwards v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707, cert. denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed. 2d 82 (1958). *Contra,* Gaitan v. United States, 10 Cir., 317 F.2d 494 (1963); United States v. Sutton, 4 Cir., 321 F.2d 221 (1963); United States v. Winstead, N.D.Cal., 226 F.Supp. 1010 (1964). Appellant requests a reappraisal of this rule in light of recent Supreme Court decisions defining the appropriate scope of post-conviction relief for state and federal prisoners.

Petitioner raises facts, undisputed at this time, which would, if true, prove a denial of his constitutional rights. That the constitutional rights of a federal court defendant are violated by the introduction at his trial of illegally seized evidence has been clear since Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The question here is whether this constitutional claim can be asserted under 28 U.S.C. § 2255. The statute allows federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution * * *" to move the sentencing court "to vacate, set aside or correct the sentence." But the statute orders appropriate relief if the court finds "that there has been *such* a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack * * *." (Emphasis added.) The ambiguities caused by the juxtaposition of these two paragraphs have been carefully treated by Judge Friendly, who recognizes it may be futile "to endeavor to draw much meaning from the rather murky language of § 2255 * * *." United States v. Sobell, 2 Cir., 314 F.2d 314, 322, cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963).

We know, however, that "the sole purpose [of § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording [federal prisoners] *the same rights* in another and more convenient forum." United States v. Hayman, 342 U.S. 205, 219, 72 S.Ct. 263, 272, 96 L.Ed. 232 (1952). (Emphasis added.) And the Court has recently summarized federal prisoner habeas corpus practice, concluding: "The course of decisions of this Court * * * makes plain that restraints contrary to our fundamental law, the Constitution, may be challenged on federal habeas corpus even though imposed pursuant to the conviction of a federal court of competent jurisdiction." Fay v. Noia, 372 U.S. 391, 409, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). This would seem to mean that habeas corpus relief for state and federal prisoners, as presently interpreted, extends to all constitutional claims, and that § 2255 must be equally broad or raise the serious constitutional questions regarding suspension of the writ, see U.S.Const., Art. I, § 9, cl. 2, avoided in *Hayman.* See Sanders v. United States, 373 U.S. 1, 11–12, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

It is arguable, of course, that restraints contrary to the Constitution may mean one thing on direct appeal and another on collateral attack. See Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 HARV.L. REV. 441 (1963). But *Noia,* a habeas corpus case, leaves little room for this approach, and it has generally been assumed since then that, at least with respect to state prisoners, federal collateral relief

is available for all constitutional deprivations. See, *e. g.,* Dillon v. Peters, 10 Cir., 341 F.2d 337, 339 (1965). It is well settled specifically that state prisoners may raise every variety of search and seizure issue in habeas corpus proceedings. Henry v. State of Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Hubbard v. Tinsley, 10 Cir., 336 F.2d 854 (1964); United States ex rel. West v. LaVallee, 2 Cir., 335 F.2d 230 (1964); Nelson v. Hancock, D.N.H., 239 F.Supp. 857 (1965); United States ex rel. Holloway v. Reincke, D.Conn., 229 F.Supp. 132 (1964). The question of the prospectivity of the exclusionary rule in state court cases, resolved in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), arose only on the assumption that habeas corpus was available for state prisoners' Fourth Amendment claims; *Linkletter* itself was a state prisoner's federal habeas case.

The argument has been made, most lucidly, and has been accepted by the majority, that the full thrust of *Noia* is applicable only to state prisoners, and that federal prisoners should be treated differently. There are substantial justifications, it is argued, such as the limitations on direct review in the Supreme Court, to afford state criminal defendants a meaningful federal forum (which was done in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953)), even where their claims were not properly presented in the state courts (which was established in Fay v. Noia, *supra*). Federal prisoners, on the other hand, have a federal forum from the outset and there is no reason to allow relitigation collaterally, "absent a botched presentation by counsel or a claim of new evidence * * *," and even then the matter involves "considerations other than those which determined Fay v. Noia," generating from the need for finalty, and from the importance to society that the claim be enforced, the latter being especially lacking in the case of search and seizure. Amsterdam, *Search, Seizure, and Section 2255: A Comment,* 112 U.PA.L.REV. 378, 379–381, 386, 387–388 (1964).

There is undoubtedly a difference in the way federal courts should treat post-conviction applications by state and federal prisoners. Brown v. Allen, *supra,* at 508, 73 S.Ct. 397 (opinion of Mr. Justice Frankfurter), interprets 28 U.S.C. § 2241 as requiring federal courts to have the "last say" with respect to questions of federal law. Federal prisoners applying for collateral relief often have had their constitutional claims passed on by federal courts at trial or on appeal, so the Brown v. Allen rationale for federal court relitigation is inapposite. But this difference provides no basis for limiting the grounds upon which federal prisoners may obtain collateral relief, or for formulating a separate set of rules to determine when a federal prisoner's claim has adequately been adjudicated. Where a federal trial or appellate court has had a "say" on a federal prisoner's claim, there may be no need for collateral relitigation. But what if the federal trial or appellate court said nothing because the issue was not raised? What if it is unclear whether the "say" was on the merits? What if new law has been made or facts uncovered relating to the constitutional claim since the trial and appeal? What if the trial or appellate court based its rulings on findings of fact made after a hearing not "'full and fair" within the meaning of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)? All these problems are common to state and federal prisoners, and the interest in finality operates equally in both situations. These problems raise, not the issue whether relitigation is necessary, but whether one adequate litigation has been afforded. It would be anomalous indeed, especially in light of the interest in maintaining good federal-state relations, if defaults not precluding one adequate federal review for the constitutional claims of state prisoners precluded such a review for federal prisoners, or if defects rendering state court adjudications inadequate did not similarly affect federal court adjudications. Even before *Townsend,* there were strong indications that § 2255 relief was available to chal-

lenge all constitutional errors. See the argument of Mr. Justice Douglas, joined by the Chief Justice and Mr. Justice Black, in Hodges v. United States, 368 U.S. 139, 141–142, 82 S.Ct. 235, 7 L.Ed. 2d 184 (1961), which, while in a dissenting opinion, was not incompatible with the *per curiam* opinion of the Court. And subsequent to *Townsend*, this court has held § 2255 available to correct admission of an unconstitutionally coerced confession. Thomas v. United States, 122 U.S.App.D.C. 225, 352 F.2d 701 (1965).

Those considerations which the majority believes argue against § 2255 collateral review of Fourth Amendment claims largely apply also to the assumption of like jurisdiction over confessions. In each instance the reviewing court must reconstruct from stale evidence an intricate factual situation and measure it against a quite imprecise constitutional standard; once illegality is shown, evidence which might well have significant probative value must be cast aside, and a settled criminal conviction overthrown. But *Thomas, supra,* establishes that under § 2255 nothing in this cluster of factors overrides the interest in guaranteeing that federal incarcerations are in harmony with the Constitution.

There may, however, be some basis for treating search and seizure (and possibly other) claims in a special way. The exclusionary rule was applied to the states in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), but in Linkletter v. Walker, *supra,* the Court refused to apply *Mapp* retrospectively. This might support the argument "not only that society has no interest in the enforcement of * * * [the rule] collaterally, but that society has the strongest sort of interest against its enforcement." Amsterdam, *op. cit. supra,* 112 U.Pa.L.Rev. at 388. Ultimately, this position represents a subjective view of the relative importance of the Fourth Amendment. For even if the rule's sole purpose is to deter unlawful police conduct, why does this make it "grudgingly taken, medicament," and how does this

serve to demonstrate when we have "swallowed" what "is needed to combat the disease"? *Id.* at 389. I have always felt, with the late Mr. Justice Frankfurter, that the Fourth Amendment has "a place second to none in the Bill of Rights," and is not just "a kind of nuisance, a serious impediment in the war against crime." Harris v. United States, 331 U.S. 145, 157, 67 S.Ct. 1098, 1104, 91 L.Ed. 1399 (1947) (dissenting opinion). And the decision to apply *Mapp* prospectively was not, as I understand it, based upon the Court's low regard for the importance of enforcing Fourth Amendment rights, but upon the inapplicability of the deterrence rationale of *Mapp* to pre-*Mapp* state court cases, and the justifiable reliance placed upon Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) (holding the exclusionary rule inapplicable to the states), by state courts and state law enforcement officers. Neither of these reasons is present with respect to federal cases decided since *Weeks*. When a new rule is created by overruling an existing Supreme Court precedent, the disturbance of finality takes on a new dimension, perhaps justifying special treatment consistent with the purposes of the new rule. See Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). Otherwise, we are left with subjective judgment, since finality is disturbed by enforcement of all constitutional rules, many of which apply regardless of the innocence or guilt of the accused.

Assuming, then, that § 2255 is available to federal prisoners seeking to enforce the Fourth Amendment, what significance should be accorded the fact that a federal court may already have resolved the issue? I find this question governed by Sanders v. United States, *supra*. The issue in *Sanders* was when a federal court can deny a repeat application for § 2255 relief without reaching the merits of the petition. The Court held this may be done only when (1) the ground for relief advanced has been determined adversely to the applicant on a prior ap-

plication and he cannot show the ends of justice would be served by a redetermination, or (2) the Government can show the applicant has abused the remedy. Even in these two situations, however, the § 2255 court has power in its discretion to hear claims on the merits.

These rules enunciated in *Sanders* to govern the availability of § 2255 on repeat applications should apply equally to a federal prisoner's first § 2255 application. *Sanders* involved a claimed involuntary guilty plea. Consequently, there was no trial or appeal where the claim could have been raised. There appears to be no reason in principle to distinguish between the finality effect of determinations of grounds made at trial or on appeal and determinations made on earlier § 2255 applications, or to give less significance to abuse of federal process generally than is given to abuse of the § 2255 remedy. The *Sanders* criteria, therefore, should be applied to this case.

District courts, under this analysis, may properly dismiss § 2255 applications based upon grounds for relief already determined adversely to the applicant on the merits, unless he can demonstrate that a redetermination would serve the ends of justice. The "ground" asserted here—illegally seized evidence—was determined at appellant's trial. We can assume the determination was on the merits as it followed a motion to suppress made during the trial. Townsend v. Sain, *supra*, 372 U.S. at 314, 83 S.Ct. 745. It is not at all clear, however, that appellant could not show the ends of justice, in the sense used in *Sanders,* would be served by permitting a redetermination. There may be factual disputes which were not resolved after a "full and fair" hearing as defined in Townsend v. Sain, *supra,* or a change in the law or some other justification for any failure to raise a crucial point or argument. Sanders v. United States, *supra,* 373 U.S. at 16–17, 83 S.Ct. 1068, 10 L.Ed.2d 148. The burden is on appellant to show the ends of justice would be served by a re-

determination, but we must give him an opportunity to meet this burden.

District courts also possess under this analysis a limited discretion in collateral litigation to refuse to hear claims or evidence underlying claims where the Government can show the failure to raise or develop these claims at earlier proceedings amounts to an abuse of federal process. The Court in *Sanders* refers specifically to the deliberate bypassing test articulated in *Noia* as the proper standard, and gives as examples cases where prisoners deliberately withhold or abandon grounds. "[N]eedless piecemeal litigation, or * * * collateral proceedings whose only purpose is to vex, harass, or delay" need not be tolerated. 373 U.S. at 18, 83 S.Ct. at 1078. For example, in Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924), a habeas corpus applicant asserted as a ground for release one of two claims he had made in an earlier application, but which he had not attempted to prove at the hearing he was accorded or on appeal from the habeas corpus court's decision, although the claim was put in issue by the return. The Court upheld denial of relief on his second application on the ground of abuse of the writ. This holding was approved in *Sanders,* 373 U.S. at 9–10, 83 S.Ct. 1068, and would seem to apply to this case with virtually the same force. Appellant here claimed illegal search and seizure at his trial and the issue was litigated. Assuming he can show the ends of justice require a relitigation, his failure to raise the claim on an appeal which he prosecuted, raising other claims, fulfills the Government's burden of demonstrating a sufficient likelihood of deliberate bypassing. See Fay v. Noia, *supra,* 372 U.S. at 431, 83 S.Ct. 822, 9 L.Ed.2d 837; Henry v. State of Mississippi, *supra,* 379 U.S. at 451–452, 85 S.Ct. 564, 13 L.Ed.2d 408. In *Wong Doo* the Court stated: "No reason for not presenting the proof at the outset is offered." 265 U.S. at 241, 44 S.Ct. at 525. If appellant likewise does not offer and prove some reason for his failure

to raise the claim on his appeal which negates the presumption in this case that his default resulted from tactics or abuse of process, relief may be denied. A remand here is necessary to afford appellant an opportunity to prove his default was otherwise caused, and to allow the district judge to exercise his discretion to excuse the default.

The proper disposition here, therefore, is to reverse the District Court's holding that § 2255 is never available to hear allegations of illegal search and seizure, and to remand with directions that the ground must be heard on the merits if appellant demonstrates that a redetermination would serve the ends of justice and that his failure to assert the claim in his direct appeal did not amount to a deliberate bypass of federal remedies. In addition, it should be made clear, as it was in *Sanders, supra,* 373 U.S. at 18–19, 83 S.Ct. 1068, that the district judge has power in his discretion to reach the merits if appellant can prove the ends of justice would be served by a redetermination, even though appellant may be unable on remand to rebut the evidence of deliberate bypassing present in this case.