**Thomas Hugh ROCHESTER, Petitioner,**

**v.**

**UNITED STATES of America, Respondent.**

**Civ. A. No. 2720-N.**

United States District Court
M. D. Alabama, N. D.

Sept. 12, 1968.

Maury D. Smith, Montgomery, Ala., for petitioner.

Ben Hardeman, U. S. Atty., Jack B. Patterson, Asst. U. S. Atty., Montgomery, Ala., for respondent.

## DECREE AND ORDER

PITTMAN, District Judge.

In Case No. 11999–N, the United States of America v. Thomas Hugh Rochester, defendant, who is the petitioner herein, on November 17, 1967, was sentenced and committed to the custody of the Attorney General for a period of five years on Count 1, and for two years on Count 2, the sentence on Count 2 to commence upon the completion of the sentence imposed on Count 1.

The defendant (hereinafter referred to as petitioner) in that case has petitioned the court in this proceeding to vacate and set aside its judgment and sentence imposed therein under the provisions of Title 28, U.S.C.A., § 2255. The United States was ordered to show cause on or before August 2, 1968. The United States filed its reply on July 31. On the same date, in response to the petitioner's request in forma pauperis, the court appointed Maury D. Smith, Attorney at Law, to represent the petitioner.

An order was issued that the petitioner be returned to this district not later than August 15, 1968, for the purpose of preparing for an oral hearing which had been set August 26, 1968, at Montgomery, Alabama. In response to petitioner's attorney's request for transcript, the official court reporter was ordered on August 19, 1968, to prepare and furnish a complete transcript to the petitioner or his court appointed attorney. This was done. This petition came on to be heard with the petitioner, his attorney of record, and attorneys for the United States Government, and witnesses in open court on August 26, 1968, evidence taken and the case taken under submission.

## STATEMENT OF THE CASE

On October 5, 1967, the petitioner, together with his court appointed attorney of record, James W. Garrett, was ar-

raigned. Petitioner pleaded *Not Guilty* to each count of a three count indictment, each count charging transportation in interstate commerce of a stolen motor vehicle; (1) a 1967 Pontiac, (2) a 1967 Chevrolet Impala, 4–Door, (3) a 1964 Buick Riviera. On November 7, 1967, the petitioner was tried before a jury with attorneys James W. Garrett and Charles E. Porter representing him, and on November 8, 1967, the jury returned a verdict of Guilty on Counts 1 and 2 and a verdict of Not Guilty on Count 3. On November 17, 1967, the petitioner was sentenced as hereinabove set out, and on the same date and at the same time with the same attorneys of record, in a Rule 20 proceeding, a Northern District of Florida case, No. 12012–N, petitioner pleaded guilty to a four count indictment. In this Rule 20 case the petitioner was sentenced to the custody of the Attorney General for a period of five years to run concurrently with the sentence imposed in Count 1 of Case No. 11999–N.

## PETITIONER'S CONTENTIONS, THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The various grounds of the petition whereby judgment and sentence of this court is sought to be vacated and set aside together with the court's findings and conclusions of law are set out as follows:

Petitioner contends there are essentially two constitutional questions: (1) That there was an illegal search which produced evidence used in the trial against him, and an illegal entry at the time of the arrest of the petitioner, and, (2) The interrogation of Rochester after the appointment of his counsel and not in counsel's presence.

▆ The condition in (1) is raised in the petition's paragraphs numbered 19 and 20. Ordinarily, an illegal search, etc. cannot be raised collaterally in a 2255 proceeding. Armstead etc. v. United States of America, etc., 5 Cir., 318 F.2d 725. The courts have recognized that where special circumstances were present, such as the defendant not being represented by counsel, it is procedurally correct to consider an alleged illegal search and seizure in a 2255. Thornton v. United States, 125 U.S.App.D.C. 114, 368 F.2d 822 (5th CA). It is contended such circumstances are present that would bring this case within the control of Thornton v. United States, supra.

▆ The FBI agent who made the arrest, and a city detective, on July 20, 1967, had a lead that the petitioner might be at the home of Mabel Bullard. There was an outstanding warrant in Florida charging the petitioner with transportation in interstate commerce of a stolen motor vehicle. The agent and detective went to the home of Mrs. Bullard in the late afternoon without an arrest or search warrant. A teen-ager, 17 years of age, met them at the door. They properly identified themselves. There was another 17 year old and several smaller children present in the home. One of the 17 year olds invited the officers into the home. The officers made an inquiry concerning the presence of the petitioner, and one of the children told them he was in the house and had been there for some time. The detective knocked on the bathroom door several times, which was locked, and subsequently the defendant voluntarily opened the door and came out. The petitioner was advised he was being arrested under an outstanding federal warrant in Florida connected with a stolen 1966 Pontiac. This stolen automobile is one of the automobiles on which the defendant was tried. The charges concerning the other two automobiles in the same indictment were made at a later time. The agent testified he did not search the house nor take any physical evidence at the time of the petitioner's arrest. The petitioner was taken away from the home and incarcerated.

▆ Later in the day the agent returned to the Bullard home and arrested Mrs. Bullard. Mrs. Bullard told her child, Billy Bullard, to get some car keys, and Billy did so and handed the keys to the FBI agent. They were as-

sorted automobile keys. Later in the day the agent used one of the keys on the Chevrolet included in the indictment of this case. The key turned the motor but would not crank the car. (See p. 93—transcript) "I couldn't get it to operate with the keys that I had my—in my possession; it seemed to me the ignition was jammed someway; I couldn't figure out why, but" (p. 94) "It turned the ignition, but that is as far as it would go; it appears as if it were jammed somehow." These keys were introduced into evidence.

Later in the day another set of keys was taken from the trunk of the Buick Riviera of Count 3 in the indictment. This car was parked on the premises of the Carroll Trucking Company. These keys were taken by the FBI agent from the trunk of the Buick with the consent of agents of the Carroll Trucking Company, bailee. These keys were not introduced into evidence, but the FBI agent discussed them and answered questions concerning them during the course of the trial. The FBI agent did not have a search warrant for the Buick.

The petitioner avers he had gone into many details with his counsel on this issue and had implored counsel to file a motion to suppress. He further avers counsel was incompetent and that counsel assured him there was an agreement with the prosecution not to introduce this evidence.

The case at bar is distinguishable from the *Thornton* case in several respects. The keys taken from the Bullard home, and admitted into evidence, were voluntarily produced and given to the agent. Testimony about the keys to the Buick was admitted into evidence. The defendant was acquitted on this count. If error had been committed, it would be without injury. However, the court finds these keys were voluntarily surrendered by a bailee of the Buick.

■ In the *Thornton* case the defendant was not represented by counsel. In this case, the petitioner had court appointed counsel, however, the petitioner averred "a demonstration of ineffective court appointed counsel, for petitioner had gone into minute detail with said counsel on the illegal search and seizure issue * * * petitioner implore said court-appointed counsel to file a motion to suppress * * * was not aware of counsel's incompetency, and accepted counsel's assurance that he and the prosecutor had agreed not to introduce any evidence not obtained under Rule—41." The court finds the petitioner is unworthy of belief. This finding will be discussed later. The court finds the petitioner did not request his counsel to file a motion to suppress and there was no agreement between petitioner's counsel and the prosecution not to introduce any evidence.

The court finds that it is a matter of common knowledge, and part of the records of this court, that petitioner's counsel has practiced at the Montgomery bar since the 1940's, has a substantial practice, is a most able attorney, and a skillful trial lawyer.

This counsel testified in this hearing that it was a matter of planned strategy, and a calculated risk during the course of the trial of the defendant, not to object to the evidence concerning the keys because of other incriminating evidence against the petitioner. The attorney's strategy was to let this evidence in, use the petitioner to testify, and try to convince the jury that the petitioner was making a clean-breast in telling the jury on the stand the whole truth. The strategy worked as to one of the automobiles, Count 3, of which the defendant was acquitted. He testified it almost worked as to the other counts.

■ Contention (2) has several aspects, to wit, (a) in paragraph 3 it is averred during the interviews " * * counsel having been frequently requested by petitioner"; (b) paragraph 4— " * * * interrogated the petitioner on four different occasions without counsel against petitioner's expressed wishes."; (c) paragraph 9 " * * * compelled to give a confession * *."

The court finds that the petitioner was interviewed on several occasions. On

each occasion the agent who testified at this hearing, Martz, was present, but was accompanied on the other occasions by one of two agents, Norman James or Dave Pender. Before each interrogation the petitioner was properly advised of his rights as set out in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The advice given to the petitioner on each occasion is substantially the same as that as set out in writing in the Government's Exhibit No. 10. Several of the interviews took place at the request of the petitioner.

With reference particularly to (a), (b), and (c), above, the court finds the interviews did take place in the absence of counsel, but that the counsel had not been requested by the petitioner nor against his expressed wishes, nor was he compelled to give the confession.

█ From observation of the petitioner during the course of this hearing, and considering his responses to questions propounded during the course of the hearing, the court finds he is a young man, 31 years of age, average intelligence, attended public schools to the ninth grade, received a GED certificate in the military service, and attended college at night for almost one year. The court finds he reasonably understood the warning of his constitutional rights. Cf. Solino Salino v. United States, 387 F.2d 354 (5th CA–1967).

█ In paragraph 15 of the petition it is averred the " * * * court appointed attorney * * * did not appeal * * * as instructed by the petitioner. * * * *", and in paragraph 16, " * * * nor did he appeal * * as instructed." The petitioner is unworthy of belief, and the court appointed attorney testified to the contrary. The court finds he did not instruct his attorney to appeal, and furthermore, he signed a waiver of right to remain in a local jail which included the statement "I am not going to take an appeal in my case." (See Government's Exhibit No. 1.) This was knowingly and understandingly signed.

Contention (2) is not within the control of Thornton v. United States, supra.

The other contentions as set out in the petition are:

█ In paragraph 16 it is averred "Judge * * * should have recused himself for * * * grudges and prejudices against * * * petitioner * * * in the very beginning * * stated to petitioner in open court 'You may as well pack your things. I'm going to send you off.'" On the trial of this cause, the petitioner changed the sense of this averment to stating this occurred after the trial just after the jury had reported and before sentencing. The record bears the time and place out. (See transcript p. 209.) The judge had tried the case, observed and heard the defendant testify, as well as all the other evidence in the case, and the jury had reported. He was certainly in a position to have made a judicial determination.

█ In paragraphs 12 and 13, the petitioner charges the court with giving prejudicial and improper instructions. These grounds cannot be raised in this petition, Delegal v. United States, 363 F.2d 433 (5th CA 1966), but are noteworthy because they demonstrate the distortions and falsehoods in which the petitioner has indulged. He testified that the transcript did not include everything that was said. This is unsupported by any evidence and is rejected by the court. Further demonstrations of why the petitioner is unworthy of belief are, for example, the petitioner averred the jury "could not reach a verdict other than 'not guilty' on one charge, and were hopelessly deadlocked on other" whereupon the court told the jury "I don't want to hear this and won't accept this, and I will tell you when you have been out long enough to reach a verdict!" Beginning on p. 204 of the transcript, this is what actually occurred. "Your Honor, the indictment is in three counts. On one count, the jury has arrived at a verdict, on one count. On the two remaining counts, the jury has been unable to settle on a verdict." The court responded, "It is proper that you

return and deliberate in the other two counts. You haven't deliberated the case long enough to—to reach a conclusion that you cannot arrive at a verdict, and I don't believe it would be appropriate at this time to accept your verdict on one count when you haven't concluded deliberating the other two counts. Is there any aspect of the case that I can help you with? I stand ready to do so if you request me to. I am not soliciting. * * *" It is noteworthy that the jury had commenced deliberation at 4:23 p. m. and recessed at 6:03 p. m. until 8:45 a. m. the following day. The above exchange took place at 9:54 a. m. of the second day at a time when the jury had deliberated less than three hours. At this hearing when the petitioner was confronted with the transcript he claimed he was just confused. The petitioner's averment in paragraph 13 with reference to the court charging the jury on possession is not in the transcript.

 The remaining grounds of the petition are matters which cannot be raised collaterally in a 2255 proceeding.

Paragraph 2 avers " * * * petitioner was arrested upon a warrant which failed to comply with Rule–41(e) * * *." The court finds there was an outstanding warrant for the petitioner's arrest of which the arresting officer had knowledge although he did not have the warrant in his possession nor was it served on the petitioner at the time of the arrest. Had there been error, it could not be complained of here. Kristiansand v. United States, 319 F.2d 416 (5th CA 1963).

Paragraph 17 concerning a statement of the prosecuting attorney in the examination of a witness, Arthur v. United States, 230 F.2d 666 (5th CA 1956), and paragraph 18, prosecuting attorney's remarks in argument to the jury, Holt v. United States, 303 F.2d 791 (8th CA 1962), and

Paragraph 21, which involves instructions to the court and determination of law by the court during the proceeding of the trial, Delegal v. United States, supra, and Arthur v. United States,

supra, are matters which cannot be raised collaterally in 2255.

The other paragraphs in the petition are argumentative.

With further reference to whether or not the petitioner's testimony is worthy of belief, in addition to the inconsistencies in his testimony with that of witnesses who impressed the court as being worthy of belief, and his evidence at variance with the transcript, it is further noted that the defendant has two previous convictions involving moral turpitude, (1) petty larceny, and (2) a bad check. The petitioner has lashed out in almost every direction in an effort to secure his release. He has made serious, unsupported charges against his attorney, against the trial judge, against the FBI agent who interviewed him, on more than one occasion at his own request, and his testimony is in conflict with that of a United States Marshal and of written disclaimer of appeal.

It is the judgment, order and decree of this court that the petition be and the same is hereby denied.