**Roosevelt ROLLERSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21616.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 14, 1968.

Decided Nov. 26, 1968.

Judgment Vacated April 7, 1969.
See 89 S.Ct. 1300.

---

Mr. William H. Allen, Washington, D. C., with whom Mr. Allan J. Topol, Washington, D. C., was on the brief, for appellant.

Mr. Carl S. Rauh, Asst. U.S. Atty., with whom Messrs. David G. Bress, U.S. Atty., Frank Q. Nebeker, John H. Treanor and Edward T. Miller, Asst. U.S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN, Circuit Judge.

**PER CURIAM:**

On February 14, 1963, while he was on trial for robbery before a jury, appellant threw a water pitcher filled with ice at the Assistant United States Attorney who was conducting the prosecution. The missile struck the prosecutor on the shoulder. Immediately excusing the jury, the trial judge told appellant that the issue of whether appellant had been in contempt would be considered at sentencing, or, in the case of acquittal, after the jury returned its verdict. The jury found appellant guilty of robbery, and, on February 21, 1963, he was sentenced to three to nine years imprisonment for that offense, and to one year for contempt, the sentences to be consecutive. On February 25, 1963, appellant was indicted in two counts [1] for the pitcher-throwing assault. He was convicted July 15, 1963, and later that month was sentenced to concurrent terms of one to three years on both counts, to be consecutive to the sentences of February 21.

The conviction for assault was never appealed, although Rollerson did appeal his robbery and contempt convictions. On October 1, 1964, this court affirmed the robbery conviction, subject to a determination on remand of appellant's mental condition. But the contempt conviction was reversed, and the case was remanded for a hearing under FED.R. CRIM.P. 42(b), to determine his mental responsibility for the pitcher-throwing

---

[1]. Assault with a dangerous weapon, 22 D.C.Code § 502 (1967) ; and assault on an Assistant United States Attorney engaged in the performance of his duties, 18 U.S.C. § 111 (1964).

assault. This court also ruled, Judge Miller dissenting, that on remand the maximum sentence would be ninety days unless a jury trial was held. Rollerson v. United States, 119 U.S.App.D.C. 400, 343 F.2d 269 (1964).

On March 5, 1965, pursuant to the mandate of this court, the District Court vacated the prior contempt conviction and sentence. It found beyond a reasonable doubt that on February 14, 1963, appellant was not suffering from a mental disease or defect, again found him guilty of criminal contempt, and sentenced him to ninety days imprisonment to commence at the expiration of the assault sentence. There was no appeal from this action by the trial court.

Two years later, on March 9, 1967, appellant moved the District Court to issue a writ of error *coram nobis*, or, alternatively, an order under FED.R.CRIM.P. 35, voiding the assault conviction on the theory that it exposed appellant to double jeopardy because of his having previously been found guilty of criminal contempt for the same act. On October 11, 1967, the motion was denied, and this appeal followed.

Neither Rule 35 nor *coram nobis* appears to be an appropriate mode of relief in the circumstances of this case, despite the Government's failure to raise any objection on this score. Appellant sought these extraordinary remedies because he assumed that relief by *habeas corpus* or under 28 U.S.C. § 2255 would be unavailable to him since he was not yet serving his sentence under the assertedly improper conviction. After the submission of this appeal, however, the Supreme Court has appeared to remove this disability from an attack by *habeas corpus*. Pey-

ton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). Accordingly, we treat the proceeding as one initiated under Section 2255.

■ The double jeopardy claim is founded upon some language used in the Supreme Court's opinion in Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). But see United States v. Mirra, 220 F.Supp. 361 (S.D.N.Y.1963). We do not, however, reach the merits for the reasons appearing below.

The availability of double jeopardy upon collateral attack is a question which, at least by reference to the older cases, is shrouded in doubt. It has been flatly held that it cannot be so raised,[2] whereas we have suggested that it could be.[3] The Supreme Court in Sunal v. Large, 332 U.S. 174, 178–179, 67 S.Ct. 1588, 1590, 91 L.Ed. 1982 (1947), after saying that "the general rule is that the writ of *habeas corpus* will not be allowed to do service for an appeal," went on to refer to exceptions in terms which could comprehend double jeopardy.

In this state of authority, we think it best to look to our most recent exploration of the subject of the availability of collateral attack for constitutional error. Thornton v. United States, 125 U.S.App.D.C. 114, 368 F.2d 822 (1966). That case holds that collateral attack is not always available in the case of alleged constitutional shortcomings but, more significantly, it analyzes at considerable length the factors which are relevant to a determination of whether a collateral attack should lie. Those involve considerably more than an assumption that the failure to raise a constitutional claim is invariably to be treated as a waiver of it.

2. Lotz v. Sacks, 292 F.2d 657 (6th Cir. 1961). *See* Ferina v. United States, 340 F.2d 837 (8th Cir.), cert denied, 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965); Barker v. Ohio, 328 F.2d 582 (6th Cir. 1964); Velazquez v. Sanford, 150 F.2d 491 (5th Cir. 1945).

3. Clawans v. Rives, 70 App.D.C. 107, 104 F.2d 240 (1939). This case appears to dif-

fer somewhat on its facts from the one before us, in that the petitioner for collateral relief in *Clawans* had diligently sought to raise the double jeopardy issue at trial. In *Clawans* great reliance was placed upon Ex parte Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), with which compare Ex parte Bigelow, 113 U.S. 328, 5 S.Ct. 542, 28 L.Ed. 1005 (1885).

The factors enumerated in *Thornton* are as follows:

1. The availability of remedies prior to and during the trial;

2. The disadvantages of collateral attack "in terms of judicial administration";

3. The need and difficulty of making belated factual determinations;

4. Whether a successful collateral attack will necessitate a new trial and, if so, whether witnesses and evidence may no longer be available, thereby making a "just conviction" impossible;

5. Whether the constitutional claim, if substantiated, would "weaken the probative value of the evidence against the accused."

■ In relating these factors to the double jeopardy claim now before us, it seems to us that the last three would not argue against the availability of Section 2255 in this case. The first two, however, reflect the salutary principle of judicial administration alluded to by the Supreme Court in *Sunal, supra*, and one which is more urgently needed than ever in these days of desperate striving to keep up with the volume of criminal trials. As stated in *Thornton*, that principle is "that habeas corpus cannot serve as a substitute for the regular judicial process of trial and appeal in the absence of circumstances indicating collateral attack is needed to provide an effective means of preserving constitutional rights." 125 U.S.App.D.C. at 117–118, 368 F.2d at 825–826.

■ Certainly in the case of a claim like double jeopardy where all the relevant facts are ordinarily known prior to trial, the raising of the issue for the first time under Section 2255 ought to be justified by circumstances which explain and excuse the failure to raise the matter earlier. In the case before us, every fact necessary to the formulation of a double jeopardy claim was known prior to the trial for the criminal assault. The issue should have been raised by a pretrial motion to dismiss the indictment. Certainly it could have been included in the answer as a defense, thereby alerting the court to the possible superfluity of the impending trial. If the claim proved to have merit, the trial court and the other overburdened agencies involved in the criminal process would have been spared the time and effort of a trial.

We do not think that an issue of this kind should be raised for the first time on a collateral attack unless there is a reasonable explanation of why it was not raised earlier at the trial, or there is a claim of intervening circumstances which now make it reasonable to raise the issue collaterally. One example of an intervening circumstance would be a supervening change in the law which creates a more favorable climate for the point. That appears not to have been true in this case inasmuch as the whole double jeopardy argument is, as remarked above, pitched upon some language of the Supreme Court in *Abbate* which was forthcoming in 1959—four years before the trial here.[4]

The petition in this case alleges nothing by way of explanation or justification of the delay. We are, therefore, disposed to affirm the dismissal of the petition upon a rationale deriving from *Thornton*. A new Section 2255 motion could always be brought if allegations could be made within the purview of that rationale. See Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1962).

Affirmed.

---

4. Appellant was indicted for assault within four days after his sentence for contempt. The trial for assault took place four months later, and at a time when an appeal from the contempt conviction was pending. Although this might suggest a preoccupation by appellant with his contempt appeal which might divert his attention from a double jeopardy claim vis-a-vis the assault charge, it is clear that the merits of such a claim did not depend upon the fate of the contempt appeal.