Robert W. GORDAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16537.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 27, 1961.

Decided Dec. 17, 1962.

Petition for Rehearing En Banc Denied
En Banc Jan. 25, 1963.

Mr. George W. Shadoan, Washington,
D. C. (appointed by the District Court),
for appellant.

Mr. David C. Acheson, U. S. Atty., Mr.
Arnold T. Aikens, Asst. U. S. Atty., and
Mr. Nathan J. Paulson, Asst. U. S. Atty.
at the time the motion was filed, were on
the motion for appellee.

Before BAZELON, Chief Judge, and
BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Appellant was convicted of violation of
the federal narcotic laws. On appeal,
this court remanded the case to the District Court with instructions to the District Judge to examine Officer Joy's
grand jury testimony in camera, and in
the event he found significant inconsistencies between the testimony before the
grand jury and at trial, he was to make
the pertinent parts of the grand jury
minutes available to the defense.[1] The
District Judge found no significant inconsistencies. On this motion the government asks this court to affirm the
finding of the District Judge.

We have examined the grand jury
minutes and have found no abuse of discretion or other error in the District
Court's resolution of this issue.

The dissent points to no material or
significant discrepancies between the
trial and grand jury testimony of the
police officer, but rather on an individual
subjective interpretation of the two sets
of answers. Essentially the dissent is a
series of comparisons of what Officer
Joy's testimony "suggests" or "may suggest," "indicates," "seems to indicate."
Our careful review of the record and
the grand jury minutes satisfies us that
the discrepancies are no more than the
normal variations which occur when one
person describes a series of events on

1. Gordan v. United States, 112 U.S.App.D.C. 33, 299 F.2d 117 (1962).

two different occasions many months apart.

The judgment of conviction is affirmed.

Affirmed.

BAZELON, Chief Judge (dissenting).

In June 1961 Gordan was convicted on all counts of a seven-count indictment charging illegal sales of narcotics. The Government's case hung "by a single thread." [1] the testimony of its sole witness, Police Officer Joy, an undercover agent at the time the prohibited narcotics transactions allegedly occurred in July 1960. The defense offered only one witness in rebuttal, one Oliver Hughes, who "categorically and materially controverted" [2] Joy's testimony. Thus the critical issue in the case was the credibility and memory of Officer Joy.

During the trial, defense counsel requested the trial judge to inspect, *in camera,* Officer Joy's grand jury testimony to determine whether there were any inconsistencies between that testimony and his testimony at trial. The trial judge refused. On appeal we held that this refusal was error and remanded the case "with instructions to the District Judge to examine Officer Joy's grand jury testimony *in camera.*" [3] Upon examination, the trial judge found "no inconsistency between the testimony given by Officer Joy before the grand jury and the testimony given at said trial." The Government now asks us to examine the grand jury minutes, review the trial judge's finding of "no inconsistency," and affirm the original judgment of conviction.

My reading of the minutes, however, reveals the following inconsistencies between the officer's grand jury and trial testimony: [4]

1. At trial Officer Joy was asked to describe how, on a certain occasion, he contacted defendant for the purpose of purchasing narcotics. He replied that he was driving along in his automobile and defendant "stopped" him. But he testified before the grand jury that he was "seated in a parked automobile" when he was "approached" by defendant, for whom he was apparently waiting.

2. At trial Officer Joy testified on direct and cross examination that, on one occasion, after paying for four capsules, he received only two, because the defendant kept the other *capsules* for himself. But his testimony before the grand jury indicates that defendant did not, on that occasion, purchase four capsules from his supplier, but only the two he gave Joy, keeping the remaining *money* for himself.

3. At trial Officer Joy testified that, on a certain occasion, he gave defendant $6.00 just before they got out of the car. But he testified before the grand jury that he had given defendant the money "previous to this time," and that defendant had possession of the money throughout the car ride.

4. At trial Officer Joy testified that he did not recall "ever" having an argument with defendant "about anything." But his testimony before the grand jury indicates that they may have argued about the $3.00 which defendant refused to return after he gave Officer Joy two instead of four capsules.

5. At trial Officer Joy testified that he had never approached defendant and tried to make a buy of drugs which defendant refused. But his testimony before the grand jury indicates that on a number of occasions defendant may have

1. Gordan v. United States, 112 U.S.App. D.C. 33, 299 F.2d 117, 118 (1962).

2. Ibid.

3. 112 U.S.App.D.C. at 35, 299 F.2d at 119.

4. Disclosure of select portions of grand jury testimony is proper, in my opinion, when it is essential to a discussion of the issues before the court and does not offend the policy reasons underlying the secrecy requirement. See Simmons v. United States, 113 U.S.App.D.C. 369, 308 F.2d 324 (1962). Both conditions prevail in the instant case.

refused Officer Joy's requests to obtain drugs.

6. At trial Officer Joy testified that he turned certain capsules over to Detective Somerville. But before the grand jury he testified that he turned these same capsules over to Detectives Hood and Bonaparte.

7. At trial Officer Joy testified that he was given certain capsules "in" the car. But before the grand jury he testified that "he was standing on the sidewalk with these other narcotics addicts when he handed [me] the capsules." (He later testified before the grand jury that he was "not sure" of that; that he did not recall it.)

8. At trial Officer Joy testified that, while they were driving, defendant tried to convince him to take his fix with the rest of them. But he testified before the grand jury that this episode occurred not while they were driving but while defendant was coming over to the parked car.

9. At trial Officer Joy described a series of events which he claimed occurred "at 12th and U." But before the grand jury he described what were apparently the same events as occurring at 14th and U Streets.

My brethren hold that these inconsistencies are not sufficiently significant or material to warrant a new trial. Or, put another way, they decide that the minutes would not have been useful to defense counsel in preparing his case or cross examining the Government's witness. I do not think that this appears from the face of the inconsistencies. That being so, defense counsel, in my opinion, should be afforded an opportunity to inspect the grand jury minutes and to urge upon the trial court as grounds for a new trial [5] the significance of any inconsistencies which appear.[6]

Without the benefit of adversary proceedings, we can only speculate as to the significance of the inconsistencies. Some of them seem to bear directly upon specific issues in the case. For example, Officer Joy's grand jury testimony suggesting that he was sitting in his parked car waiting for defendant, that he unsuccessfully attempted on a number of occasions to purchase drugs from defendant, and that he purchased the drugs with police department advance funds,[7] all relate to the issue of entrapment about which defense counsel unsuccessfully sought to elicit information throughout the trial.

Other inconsistencies are not so obviously related to specific issues in the case. But their significance as grist for the impeachment mill becomes obvious when they are viewed against the background of Officer Joy's trial testimony. Officer Joy did not describe events in general terms; he related with scrupulous precision the details of each episode.[8] Against this background any

---

5. See note 10 infra.

6. Courts should be especially willing to be aided by the adversary process when the policy reasons behind the traditional secrecy of grand jury proceedings do not apply, as is clearly the case here. See Simmons v. United States, 113 U.S.App. D.C. 369, 308 F.2d 324 (1962).

7. This fact was not disclosed (or denied) at trial, and was thus not listed among the "inconsistencies." But cf. Jencks v. United States, 353 U.S. 657, 667, 77 S.Ct. 1007, 1012, 1 L.Ed.2d 1103 (1957), where the Supreme Court said:

"Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The *omission* from the reports of facts related at trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony." [Emphasis supplied.]

8. He related, for example, how defendant "withdrew a large white envelope from his right side pants pocket * * *." [Record pp. 5–6]; and how he placed the capsules "in [his] left front shirt pocket" [Record pp. 6, 10]. His geographical descriptions were not by neighborhood or by approximate locations. He described, for example, being driven to 782 Irving Street, N.W.; 1207 C Street, S.E. [Record p. 14]; and 211 Eleventh Street, S.E. [Record p. 17]; he related

prior inconsistent statement would appear to have significance, as was tacitly recognized throughout trial by both counsel.[9]

Thus the fact that Officer Joy testified at trial that defendant kept two capsules, while before the grand jury he seemed to testify that he kept the money rather than the capsules may be of no independent significance as an issue in the case (since the defendant was convicted of selling and not using); but this inconsistency might have provided assistance in dissipating the force of Officer Joy's testimony on the jury. So, too, with the other inconsistencies.

I conclude, therefore, that there are inconsistencies between Officer Joy's trial and grand jury testimony. Since it does not appear from the face of these inconsistencies that they would not have been useful to the defense, the defense, in my opinion, should be allowed "to examine the grand jury testimony * * * and to urge upon the [trial] court, as grounds for a new trial, any material inconsistencies alleged to exist between such testimony and the testimony of the same witness at the trial. If material inconsistencies are found by the District Court to exist, the District Court shall grant a new trial.[10] If a new trial is denied, the order of denial [should be appealable] to this court." DeBinder v. United States, 110 U.S.App.D.C. 244, 292 F.2d 737, 739 (1961).

I would therefore deny the Government's motion for affirmance.

---

how within a few hours of one evening he was driven to no less than fourteen different locations, each of which he described with precision and certainty.

There is no indication that Officer Joy testified from notes at the trial or before the grand jury. The "notes" referred to in note 9 infra are the "daily report sheets * * * made for the narcotics squad" [Record p. 47]. The grand jury minutes also indicate the existence of a "statement of facts" as well as an "original work report." It is unclear what role these documents played at the grand jury proceedings and trial, or whether defense counsel knew of their existence.

9. Much of the closing arguments of both sides was directed at Officer Joy's credibility. Defense counsel argued that no one could remember occurrences of a year before with the "great detail" displayed by Officer Joy. Government counsel responded that obviously Officer Joy did remember these occurrences with such detail. To support this claim the prosecuting attorney emphasized the fact that defense counsel had inspected Officer Joy's "notes" (see note 8 supra) concerning the transactions and had found no inconsistency. "Now do you remember, members of the jury," asked Government counsel, "any question that [defense counsel], who had an opportunity to study the notes of Joy—was he able to, in any way, impeach Joy? Was he able to say after having studied those notes, or to question him, 'you have lied when you testified from that stand because your notes don't show it; your notes show to the contrary'; that he wasn't able to do it."

10. In my view the District Court does not, on such a remand, have its usual broad discretion in denying a request for a new trial. In effect we are asking it to decide whether its error in denying defendant's request to inspect the minutes during trial was harmless or prejudicial. And the Supreme Court has held that in making such a determination close questions should be resolved in favor of the accused. See Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L. Ed. 1557 (1946); see also Leigh v. United States, 113 U.S.App.D.C. 390, 308 F. 2d 345.