**Marshall M. POWELL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18315.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 1, 1965.

Decided Aug. 30, 1965.

---

J. Skelly Wright, Circuit Judge, dissented.

Mr. Paul Driscoll (appointed by this court), Washington, D. C., for appellant.

Mr. Patrick H. Corcoran, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee.

Messrs. Daniel J. McTague and John A. Terry, Asst. U. S. Attys., also entered appearances for appellee.

Before DANAHER, Circuit Judge, BASTIAN, Senior Circuit Judge, and WRIGHT, Circuit Judge.

BASTIAN, Senior Circuit Judge:

Appellant is one of 102 narcotics offenders against whom one Metropolitan Police Department undercover agent, Officer Rufus Moore, filed complaints in March 1963. During a period of about seven months beginning in August 1962, Officer Moore operated undercover for the Narcotics Squad and on October 10 and 11, 1962, he observed the transactions which led to the charges against appellant.[1] On December 18, 1962, appellant was arrested on an unrelated charge of narcotic vagrancy (of which he was later acquitted) and, on January 18, 1963, he was committed to the District of Columbia Jail upon execution of a warrant charging him with violation of his parole from incarceration for a 1958 narcotics conviction. Thus, appellant was in jail serving the remainder of his 1958 sentence when the warrant based on Officer Moore's complaint was served upon him.

■ At the outset, appellant complains that even though the police case against him was complete in October 1962 he was not arrested on those charges until March 1963, and he alleges that this five-month delay was purposeful, deliberate, vexatious, arbitrary and oppressive, and that he was prejudiced thereby. The alleged prejudice, says appellant, lies in his inability to recall the events of October 10 and 11, 1962, and to obtain witnesses who could lucidly support his sole affirmative defense of alibi.[2] Counsel for appellant, in his brief, invokes the Sixth Amendment right to a speedy trial and Rule 48(b) of the Federal Rules of Criminal Procedure. We think, however, and counsel conceded during oral argument, that neither the Sixth Amendment nor Rule 48(b) is involved here because the time period of the delay was between offense and arrest. See Nickens v. United States, 116 U.S.App.D.C. 338, 339–340, 323 F.2d 808, 809–810 (1963); and Redfield v. United States, 117 U.S.App.D.C. 231, 328 F.2d 532, cert. denied 377 U.S. 972, 84 S.Ct. 1654, 12 L.Ed.2d 741 (1964). Rather, the gravamen of appellant's complaint is that he was denied a fair trial under the due process clause of the Fifth Amendment because of the delay.[3]

■ Since the period with which we are concerned, that between commission of an offense and the arrest therefor, is to some extent covered by a statute of limitations,[4] one might think that Congress had legislatively determined the question now raised.[5] However, the issue here is not about the outer limits of a time period in which a prosecution may be initiated but about the problem of to what extent and under what circum-

1. The transactions were sales of unstamped narcotics (heroin) to a person who had no written order therefor, and appellant was charged with violations of 21 U.S.C. § 174 and 26 U.S.C. § 4704(a) and § 4705(a).

2. The fact, as noted later in the opinion, that appellant produced an alibi witness who testified in his behalf would seem to rebut his claim of prejudice and to resolve this issue against him.

3. An eight-month delay between offense and arrest was held to be not oppressive in Hardy v. United States, 119 U.S.App. D.C. 364, 343 F.2d 233 (1964), cert. denied, 380 U.S. 984, 85 S.Ct. 1353, 14 L. Ed.2d 276 (1965). Also, in Wilson v. United States, 118 U.S.App.D.C. 319, 335 F.2d 982 (1964), this court refused to grant a rehearing en banc to consider a due process claim founded on a six-month delay between offense and arrest.

4. The applicable statute in this case is 18 U.S.C. § 3282, but appellant does not claim that his prosecution was barred thereby.

5. To be entirely accurate, it should be noted that an arrest does not toll the statute of limitations. Rather, it is the return of an indictment or the filing of an information which must be done before expiration of the statutory period, and this may occur before as well as after the arrest. Since in this case the arrest occurred first, we limit our consideration accordingly.

stances the police may delay making an arrest once they have sufficient knowledge of a crime to support the arrest of a given individual for that crime.

■■ We think that an accused must show two things in order to invoke an exercise of our supervisory power because of alleged basic "unfairness," cf. Ross v. United States, *infra* note 6, resulting from claimed delay in his arrest: that there was no legitimate reason for the delay, and that he was prejudiced by the delay. Appellant bears the burden of establishing his claim, Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939), Wilson v. United States, 218 F.2d 754, 757 (10th Cir. 1955), Lotto v. United States, 157 F.2d 623, 626 (8th Cir. 1946), and he has not met this burden in this case. The Government says that its undercover agents would be "blown," to use the vernacular, if they came to the surface to sign complaints as soon as an offender is detected and that the Government is entitled to maintain their usefulness by delaying arrests which would reveal them as agents. We believe this position to be both sound and substantial, for the Government, as the representative of the public, has a vested interest in operating at maximum efficiency in its enforcement of the law. Public interest in the proper administration of justice permits, if indeed it does not require, the rights and interests of the public to be kept as well protected and free from prejudice as is possible, so long as that protection and freedom is consistent with the rights of an accused. Use of undercover agents is a necessary and accepted police practice, and the interest of the Government in keeping an agent's identity secret for a reasonable period is a legitimate basis for delaying the arrest of an individual wrongdoer while the agent is continuing his covert investigations. This court indicated in Nickens, *supra*, that the statute of limitations is but one, albeit the ultimate, bar to prosecution. Our view of the instant case is that it presents neither a due process question nor a case for exercise of our supervisory powers.

■ Further, since it cannot be seriously argued that the police work wholly independently of the United States Attorney's office in these matters, it would seem that the acknowledged existence of governmental discretion in deciding whether or not to prosecute a given case tends to rebut appellant's claim of right to immediate arrest. We hold that the pre-arrest delay in this case was supported by a commendably legitimate reason. The efficacy of the undercover investigation which revealed appellant as a narcotics trafficker is demonstrated by the fact that 102 arrest warrants were issued for narcotics violations from this one investigation alone. To judicially disapprove of the police practice here involved would virtually end effective enforcement of narcotics laws, for surely it is within the realm of common knowledge and common sense that uniformed or otherwise known policemen are unable to penetrate the *sub rosa* world of the narcotics peddler. Extensive, time-consuming investigations by undercover operatives, who daily risk their lives, are required to get to the retail and wholesale sources of illicit narcotics.[6]

Since appellant has impeached neither the necessity for nor the investigative activities of Officer Moore, he has, in our opinion, fallen short of establishing his due process claim. As we said, both the absence of a valid reason for pre-arrest delay and the fact of prejudice are necessary to raise the due process claim. Appellant's claim that when he was arrested his memory of his whereabouts on or the events of October 10 and 11, 1962, was not clear might have found some support had he so testified, but on the record here we cannot say that this human failing, standing alone, has been shown to be of constitutional dimensions.

6. Compare the discussion, pro and con, on the general problem in Ross v. United States, No. 17,877, 121 U.S.App.D.C. —, 349 F.2d 210, decided by this court June 30, 1965.

In *Ross* the respective positions taken by the members of the sitting division were extensively canvassed. The majority view there turns finally on the lack of adequate corroboration of the testimony of the undercover police officer. See note 4 of *Ross* and (3) of the last paragraph of the majority opinion in that case. Even so, *Ross* left open yet other cases, each to turn on its own facts. A seven-month delay there was too long, the court said, but a four-month delay might not be. Compare Mackey v. United States, No. 18,525, 122 U.S.App.D.C. ——, 351 F.2d 794, decided June 30, 1965.

Thus, no automatic rule of decision was announced in *Ross*, and if, as the dissenting judge here suggests, we have not applied *Ross* mechanically, we have a good reason for not doing so: The division of the court which decided *Ross* failed to follow a long line of decisions of the Supreme Court and of this court, including our own recent decisions in Morgan v. United States, 115 U.S.App.D.C. 310, 319 F.2d 711, rehearing *en banc* denied, cert. denied, 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114 (1963), and Wilson v. United States, *supra* note 3. Indeed, the *Wilson* court explicitly stated: "[T]he uncorroborated testimony of a narcotics agent is sufficient to support conviction for violation of the narcotics laws." As stated in note 3 hereof, this court rejected, by a vote of 6 to 3, rehearing *en banc* in *Wilson*, not only on the corroboration phase of the case but also on the lapse of time between the offense and the arrest.

Though we do not consider it necessary to our decision, it should be noted that the narcotics sales for which appellant stands convicted were made, in the presence of Officer Moore, to one Atria Harris, a special employee of the Narcotics Squad. Harris, called as a *defense* witness, corroborated Officer Moore's testimony that the sales were made by appellant on the dates in question. Further, although appellant did not testify, his alibi defense was the testimony of his sister to the effect that appellant was in New York visiting her for an approximate two-month period which encompassed the dates of the sales. Obviously, the jury chose to disbelieve appellant's sister.

■ The other points raised on appeal merit but short consideration. Appellant was not improperly denied a preliminary hearing since it was his own actions which forced continuance. While, in some circumstances not here present, remedial measures may be sought after an indictment is returned, neither dismissal of the indictment nor reversal of the conviction after a full scale trial is an appropriate remedy, especially where, as here, there is no showing of prejudice. Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965). Appellant was not denied a speedy trial; all post-arrest delay is clearly attributable either to appellant himself or to his counsel. See Rindgo v. United States, 120 U.S.App.D.C. 138, 344 F.2d 523 (1964), cert. denied, 380 U.S. 938, 85 S.Ct. 951, 13 L.Ed.2d 825 (1965). Denial of appellant's motion for a transcript of the grand jury proceedings was, in the circumstances of this case, entirely proper as there was no showing of particularized need, Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); and, unlike Gordan v. United States, 112 U.S.App. D.C. 33, 299 F.2d 117 (1962), the Government's case here does not hang by the single thread of one police officer's testimony. The prosecutor's rebuttal argument was proper, if somewhat lengthy, and in any event was not objected to at trial.

■ Finally, we find sufficient evidence in the record to support the convictions on all counts.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

The panel opinion in this case looks 180 degrees in the opposite direction from the panel opinion in Ross v. United States, 121 U.S.App.D.C. ——, 349 F.2d 210 (1965), decided just two months ago.[1] Moreover, it sanctions a system of law enforcement which, in my judgment, is fraught with the danger of convicting, and branding as criminal, defenseless and innocent people. As the panel opinion shows, appellant is one of 102 alleged narcotics offenders against whom a new policeman filed complaints all at one time. The majority opinion would approve convictions predicated on the uncorroborated testimony of the undercover policeman[2] in spite of the fact that prosecution was purposefully delayed for a period of several months during which the accused-to-be, innocent or guilty, would have no way of knowing the Government was holding a charge against him.

The policeman in this case, Officer Moore, followed the traditional pattern of narcotics investigations made by the Metropolitan Police Force. Under this pattern, a new policeman, working undercover, goes into the street, usually with a drug addict informant, and makes cases against other drug addicts by buying capsules of heroin. Customarily, the purchases of narcotics are made from persons the police officer has never seen before in his life and may never see again during the undercover investigation. The incident, however, is entered in the undercover policeman's diary as to time, date and place of each purchase, but no description of the seller, other than possibly a nickname, is recorded. There are no pictures in the policeman's diary. The only picture of the seller is in the mind of the undercover officer.

At the appointed time, months after the purchases of narcotics, using his diary as his prop, the undercover policeman files charges against all of the persons from whom he has made buys, in this instance 102. He then goes out on the street with other officers to find the people accused. In this search the undercover officer's primary prop is his own mental picture of the sellers. I suggest that it defies human experience for any man, particularly a new policeman, to remember and to identify with absolute conviction the particular 102 faces, as distinguished from hundreds of others, that passed through his mind, many on just one occasion, during the kaleidoscope of his months-long undercover investigation. Indulging the unlikely assumption that he can remember the 102 particular faces, to suggest that he can allocate each face to the appropriate time and place shown in his diary offends credulity.

Viewed from the standpoint of the people the policeman identifies, the situation is even more disconcerting. There is just no way in which an accused can protect himself against the stale charge in the policeman's diary plus the policeman's mental image of him as the offender. The accused has no way of knowing, to say nothing of proving, where he was at the time and on the day the policeman says his diary shows he made a sale of narcotics to the policeman. At the close of the undercover investigation, when arrest time came, Officer Moore in this case could have

---

1. Fortunately, since the facts in this case, as shown by the court's opiinon, are clearly distinguishable from *Ross*, the statements made in the opinion in no way impair the principles announced in *Ross*.

2. The panel opinion, at page 709, states: "Though we do not consider it necessary to our decision, it should be noted that the narcotics sales for which appellant stands convicted were made, in the presence of Officer Moore, to one Atria Harris, a special employee of the Narcotics Squad. * * *"

walked into the Negro slum area of Washington and picked up the first 102 people he found, charged them with the 102-odd sales shown in his diary, identified them on trial, and the persons so identified would doubtless be convicted in large numbers. They would be helpless to defend themselves. The people in this subculture simply do not have desk pads and social calendars to assist them in determining where they were at a particular time many months before. They live from day to day and one day is very much like another.

I am not suggesting, of course, that Officer Moore would accuse the first 102 people he met. I am suggesting that in this kind of grab bag operation he could make mistakes in identification, and his mistakes would very likely wind up in the Lorton Reformatory serving five-, ten- or fifteen-year sentences. This spectre apparently does not disturb the majority of this panel. I find it frightening.

The practice of this court in narcotics delay cases[3] has been to remand to the District Court for hearing on the reasonableness of the delay and the prejudice to the defendant. Now that the guidelines for determining reasonableness and prejudice in this type of case have been set out in *Ross*, it is particularly appropriate that the District Court be permitted to apply these guidelines to this case after a proper evidentiary record on this issue is developed. I would, therefore, remand this case to the District Court for this purpose.

I respectfully dissent.

3. See Ross v. United States, *supra*, No. 17,-877, remanded for further proceedings January 28, 1964, decided June 30, 1965, 121 U.S.App.D.C. ——, 349 F.2d 210; Mackey v. United States, No. 18,525, remanded for further proceedings November 19, 1964, decided June 30, 1965, 122 U.S.App. D.C. ——, 351 F.2d 794; Johnson v. United States, No. 18,207, remanded for further proceedings December 16, 1964, appeal dismissed April 14, 1965, 350 F.2d 784; Woody v. United States, No. 17,965, remanded for further proceedings December 11, 1964, appeal pending; Godfrey v. United States, No. 18,442, remanded for further proceedings November 23, 1964, appeal pending; Roy v. United States, No. 18,285, remanded for further proceedings November 10, 1964, decided September 1, 1965; Ward v. United States, No. 18,420, remanded for further proceedings September 18, 1964, decided April 30, 1965, 120 U.S.App.D.C. 311, 346 F.2d 423; and Jackson v. United States, No. 18,597, remanded for further proceedings April 21, 1965, decided September 13, 1965, 122 U.S.App.D.C. ——, 351 F.2d 821.