Robert W. GORDAN, Petitioner,

v.

UNITED STATES of America, Respondent.

Civ. A. No. 606–67.

United States District Court
District of Columbia.

Aug. 14, 1967.

George W. Shadoan, Rockville, Md., and Raymond W. Russell, Washington, D. C., for petitioner.

Lee A. Freeman, Jr., Asst. U. S. Atty., David G. Bress, U. S. Atty., Oscar Altshuler, and Arthur L. Burnett, Asst. U. S. Attys., for respondent.

## OPINION

HART, District Judge.

This is a petition for post-conviction relief pursuant to 28 U.S.C. § 2255. Petitioner Robert W. Gordan was convicted on June 14, 1961, on all seven counts of an indictment charging the unlawful possession, concealment and sale of heroin in violation of federal narcotics law. On June 30, 1961, this Court sentenced Gordan to ten years on counts one, three, five and seven and three to nine years on counts two, four and six, all sentences to run concurrently.[1]

Through his trial attorney George W. Shadoan, Esq., petitioner now collaterally attacks his conviction of six years ago, claiming that in violation of the due process clause he was deprived of "the ability to prepare and present a defense." Specifically, petitioner alleges that the four-month delay between the narcotics offenses (July 5, 6 and 9, 1960) and issuance of the arrest complaint resulted in the unavailability of "special employee" Charles R. Rogers, a witness to two of the offenses whose testimony might have supported a defense of entrapment.

Petitioner's prayer for relief raises two questions: First, whether Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), which dismissed a narcotics indictment because of a prejudicial seven-month offense-to-arrest delay, applies retroactively on collateral attack; and Second, whether Ross applies to the facts of this case. Petitioner's additional argument based on Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), will be discussed after consideration of his Ross argument.

## APPLICATION OF ROSS v. UNITED STATES

1. *Retroactivity of criminal law decisions.*

Prior to 1965, newly announced *Constitutional* doctrines were applied retroactively as a matter of course. However, in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court held that the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), did not apply to state convictions which had become final prior to *Mapp*. Since *Linkletter*, the Supreme Court has consistently given greater prospectivity to its new criminal law decisions, limited in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), only by the Art. III ban on advisory opinions.

---

1. Petitioner's conviction was affirmed, Gordan v. United States, 114 U.S.App.D.C. 191, 313 F.2d 582 (1962), cert. denied, 374 U.S. 839, 83 S.Ct. 1890, 10 L.Ed.2d 1060 (1963), after the case had been remanded for inspection *in camera* of certain grand jury testimony, 112 U.S.App. D.C. 33, 299 F.2d 117 (1962).

The *Ross* decision, even if applicable here, does not meet the Supreme Court's general limit on retroactivity, extending retrospective application only to Constitutional rules which (1) affect "the fairness of the trial—the very integrity of the fact-finding process" [2] and (2) insulate criminal proceedings from "the clear danger of convicting the innocent." [3] Among the cases which did meet this test, all of which won retroactivity prior to *Linkletter*, are Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel essential to conducting fair trial); Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (trial transcript on appeal held integral part of trial system); and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (New York procedure did not provide fair method for testing voluntary confession).[4]

Stovall v. Denno, supra, supports denial of retroactivity to *Ross*. In *Stovall* the Supreme Court applied prospectively the requirement of counsel at police line-ups announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The Court said, 87 S.Ct. at 1970:

> "Although the *Wade* [rule is] * * * aimed at avoiding unfairness at the trial by enhancing the reliability of the fact-finding process in the area of identification evidence, 'the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree.' Johnson v. State of New Jersey [384 U.S. 719, at 728, 729, 86 S.Ct. 1772, at 1778, 16 L.Ed.2d 882

(1966)]. The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a 'question of probabilities.' *Ibid.* Such probabilities must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice."

The Supreme Court in *Wade* outlined the increased risk of misidentifications caused by some police line-ups. Similarly, *Ross* reflects concern with uncorroborated identifications in narcotics prosecutions based on "a single brief contact by a Government witness who, in a relatively short period of time, has participated in a substantial number of virtually identical transactions." [5] Because the rules of both *Wade* and *Ross* intend to reduce misidentifications, the holding and reasoning in *Stovall* provide precedent for applying *Ross* prospectively.

Turning now to the specific tests suggested in Linkletter v. Walker, supra, 381 U.S. at 636, 85 S.Ct. 1731, and subsequent Supreme Court cases, it is necessary to consider (a) the purpose served by the new *Ross* rule; (b) the extent of reliance by law enforcement authorities on the old standards; and (c) the effect of retroactivity on the administration of justice.

As to the first factor, the *Ross* decision took sharp aim at "the pattern and effect of the undercover narcotics operations of the Metropolitan Police," which the 2–1 majority viewed with "a growing apprehension":

> "The recurring spectacle of convictions based solely upon the testimony of a police witness who, by reason of lapse of time, could not testify on the basis

2. Linkletter v. Walker, supra, 381 U.S. at 639, 85 S.Ct. at 1743.

3. Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed. 2d 453 (1966) (no retroactive effect to ruling forbidding state prosecutor from commenting on defendant's failure to testify).

4. See Linkletter v. Walker, supra, 381 U.S. at 639 n. 20, 85 S.Ct. 1731.

5. Tynan v. United States, 376 F.2d 761, 763 (D.C.Cir., 1967). See also Powell v. United States, 122 U.S.App.D.C. 229, 234, 352 F.2d 705, 710 (1965) (dissenting opinion of Judge Wright); Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214, 220 (1966) (dissenting opinion of Judge Burger).

of unaided personal recollection, began to implant doubts as to the propriety of permitting the reasonableness of the delay, in this very narrow and specialized class of narcotics cases, to be 'controlled *exclusively* by the application of the statute of limitations.'" 121 U.S. App.D.C. at 238, 349 F.2d at 215. The purpose of the rule was to alter police practice: "Since the prejudice to the accused in these cases is a function of police investigative methods, the police have the power and corresponding obligation to minimize it." Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214, 216 (1966) (separate opinion of Chief Judge Bazelon).

But since *Ross* has a "prophylactic" function, Id. at 217 n. 7, its retrospective application here would be as futile as would have been retrospective application of the exclusionary rule of Mapp v. Ohio, supra, which also aimed at deterring certain police action. Here as in Linkletter v. Walker, supra, 381 U.S. at 637, 85 S.Ct. at 1742, the protested police procedure has already occurred "and will not be corrected by releasing the prisoners involved." And in Stovall v. Denno, supra, the Supreme Court used a similar analysis of the exclusionary identification rules announced in United States v. Wade, supra, to deny retroactivity; that precedent again is persuasive here because *Ross* dealt in part with identification issues.

As to the second factor of reliance, the majority in Powell v. United States, 122 U.S.App.D.C. 229, 233, 352 F.2d 705, 709 (1965), noted that *Ross* ignored "a long line of decisions of the Supreme Court and of this court," including Wilson v. United States, 118 U.S.App.D.C. 319, 335 F.2d 982 (1963), rehearing denied *en banc* (1964), sustaining a narcotics conviction based on the uncorroborated testimony of a narcotics agent. See also Ross v. United States, 121 U.S.App.D.C. 233, 239, 349 F.2d 210, 216 (1965) (dissenting opinion of Judge Danaher).

As to the third factor—the burden on administration of justice—retroactive application of *Ross* could affect nearly every pre-1965 narcotics defendant still incarcerated, inasmuch as drug law enforcement depends almost exclusively on the use of undercover agents. Report of the President's Commission on Crime in the District of Columbia 568 (1966). Mandatory minimum sentences provided for most federal drug offenders mean that a large proportion of defendants convicted many years ago are still in jail; for example, petitioner Gordan was convicted in 1961. Numerous hearings on possible prejudice resulting from offense-to-arrest delays in pre-*Ross* cases would unduly burden this Court, which has a backlog of over 1000 criminal cases awaiting trial.[6] Moreover, the difficulty of rebutting claims of prejudice based on speculation as to the testimony of alleged witnesses unavailable at trial might enable guilty defendants to escape full punishment although prosecuted under police procedures perfectly proper at the time of trial.

Petitioner's demand for retroactivity further loses force since *Ross* does not represent a declaration of pre-existing Constitutional rights; it derives instead from the supervisory powers of the Court of Appeals of this Circuit prompted by concern with the sufficiency of identifications by police undercover agents. The exercise of such powers to alter permitted practices no more entitles a previously convicted defendant to retroactive benefit than would a change in the definition of a hearsay exception entitle him to a new trial. Cf. United States v. Sobell, 314 F.2d 314, 325 (2 Cir., 1963) (society has legitimate interest in finality of criminal litigation.)

---

6. Cf. Stovall v. Denno, supra 87 S.Ct. at 1971: "At the very least, the processing of current criminal calendars would be disrupted while hearings were conducted to determine taint, if any, in identification evidence, and whether in any event the admission of the evidence was harmless error. Doubtless, too, inquiry would be handicapped by the unavailability of witnesses and dim memories. We conclude, therefore, that the *Wade* [rule] * * * should not be made retroactive."

In *Ross* itself, the majority held the delay question only "akin to a Fifth Amendment due process issue, centering around appellant's ability to defend himself," 121 U.S.App.D.C. at 234, 349 F.2d at 211, and said that "a due regard for our supervisory responsibility for criminal proceedings in this jurisdiction requires" reversal. 121 U.S.App.D.C. at 239, 349 F.2d at 216. Judge Danaher, dissenting, noted that the majority wished to "supervise the police in their conduct of an investigation." Ibid. A different panel in Powell v. United States, supra, and Judge Tamm in Hardy (Ferguson) v. United States, 381 F.2d 941 (D.C.Cir., June 19, 1967), have also characterized *Ross* as an exercise of supervisory powers; so has the Second Circuit, United States v. Sanchez, 361 F.2d 824 (2d Cir. 1966). Finally, the Supreme Court has flatly stated that "there is no constitutional right to be arrested." Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966).

### 2. Cognizance of a Ross Claim on Collateral Attack

The United States Court of Appeals of this jurisdiction recently defined the scope of 28 U.S.C. § 2255. Holding that a federal prisoner cannot ordinarily invoke the exclusionary rule of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), on collateral attack, the Court ruled that § 2255 is not always available to correct the denial of admittedly Constitutional rights. Instead, "whether collateral attack is permissible depends upon the nature of the constitutional claim, the effectiveness of the direct remedies, and the need for choice among competing considerations in quest of the ultimate goal of achievement of justice." Thornton v. United States, 125 U.S.App.D.C. 114, 368 F.2d 822, 826 (1966).

Judge Leventhal, writing for the Court, emphasized "the substantial disadvantages of collateral review in terms of judicial administration":

"First in time there is the reasonable anticipation of a larger number of hearings on petitions that will prove to be insubstantial in fact. * * * Second is the difficulty of belated determinations * * * [and] a corresponding 'increased difficulty of proving perjury' * * *. The difficulty is not eradicated by noting that the accused would have the burden of proof. The narration of the events which he now provides, after protracted and intense rumination, may unwarrantedly overshadow the cloudy recall of officers for whom this was but one case among hundreds. * * * [P]ostpone the adjudication until some collateral proceeding years hence and the examination is likely to be phantasmic. * * * Last but by no means least [entertaining the claim on collateral attack] * * * might well imperil the public interest in securing a just conviction." 125 U.S.App.D.C. 119, 368 F.2d at 827, n. 10.

The *Thornton* decision governs because the *Weeks* claim involved there, like the *Ross* doctrine in effect, constitutes an exclusionary rule aimed at police procedure. Judge Leventhal also said:

"Collateral attack is negatived not only by the rule against retrospectivity [in Linkletter v. Walker, supra] which is relevant but not controlling, but by the consideration that collateral attack would be of little if any weight in achieving the pattern of lawful conduct by enforcement officials which is the objective of the exclusionary rule. Enforcement officials know that evidence unreasonably seized is subject to exclusion * * *. There is no basis for supposing that their conduct will be substantially influenced by the additional possibility of an inquiry years hence. * * * [C]ourts will not pursue *ad infinitum* the objective of deterring a blundering constabulary * * *." 125 U.S.App.D.C. 120, 368 F.2d at 828.

In his most general formulation, Judge Leventhal suggests that collateral review is available only "for the denial of a constitutional right accompanied by 'weakness in the judicial process which has resulted in the conviction', such as lack of counsel, perjury undiscovered,

mob domination, etc.",[7] i. e., for "a fundamental defect which inherently results in a complete miscarriage of justice, * * * an omission inconsistent with the rudimentary demands of fair procedure."[8] Moreover, we must remember that a fair and efficient procedural system does "not cater to a perpetual and unreasoned anxiety that there is a possibility that error has been made in every criminal case. * * *" Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv.L. Rev. 441, 452–453 (1963).

The factors and definitions listed above indicate that analysis of the availability of collateral attack roughly parallels analysis of retroactivity, resulting in both instances in the rejection of petitioner Gordan's claim. This conclusion finds direct support in Hardy (Ferguson) v. United States, supra. Judge Fahy, concurring in affirmance, held: "I do not think, however, that the standards of *Ross* should be applied on collateral attack in a case in which the judgment was affirmed on direct appeal before the date of the *Ross* decision." Judge Tamm voted to affirm because "the precise issue now raised [offense-to-arrest delay] was fully raised on * * * [two] direct appeals and disposed of adversely * * *." Nothing in Judge Tamm's opinion suggests that he would not join Judge Fahy's holding in a case predating *Ross* in which the delay issue had not been raised on appeal. Chief Judge Bazelon dissented.

### 3. *Analysis of Ross Doctrine*

An additional reason to deny petitioner's request for relief derives directly from an analysis of the *Ross* decision itself. The 2–1 majority in *Ross* (Judges McGowan and Washington) dismissed a narcotics indictment because of:

"(1) a purposeful delay of seven months between offense and arrest, (2) a plausible claim of inability to recall

or reconstruct the events of the day of the offense, and (3) a trial in which the case against appellant consists of the recollection of one witness refreshed by a notebook." 121 U.S.App.D.C. at 238, 349 F.2d at 215.

Since that time thirteen decisions of the Court of Appeals of this Circuit have dealt, at least in part, with claims under *Ross*. In twelve cases the Court *affirmed* convictions on this issue, distinguishing the factual situation of *Ross*:

Bey v. United States, 121 U.S.App.D.C. 337, 350 F.2d 467 (1965), cert. denied 385 U.S. 905, 87 S.Ct. 218, 17 L.Ed.2d 136 (1966) (3½ month delay; four sales involved; uncorroborated testimony of agent not based solely on notebook).

Mackey v. United States, 122 U.S.App. D.C. 97, 99, 351 F.2d 794, 796 (1965) (concurring opinion of Judge Washington) (two-month delay absent showing of prejudice not unreasonable; six sales).

Cannady v. United States, 122 U.S. App.D.C. 120, 351 F.2d 817 (1965) (4½ month delay; two sales; conviction reversed on other grounds).

Jackson v. United States, 122 U.S.App. D.C. 124, 351 F.2d 821 (1965) (prejudice cannot be assumed from 5-month delay; one sale).

Powell v. United States, 122 U.S.App. D.C. 229, 352 F.2d 705 (1965) (5-month delay; two sales on successive days).

Worthy v. United States, 122 U.S.App. D.C. 242, 352 F.2d 718 (1965), vacated on other grounds, 384 U.S. 894, 86 S.Ct. 1961, 16 L.Ed.2d 1000 (1966) ("somewhat less than" 4-month delay does not require inquiry into reasonableness of police procedure).

Roy v. United States, 123 U.S.App.D.C. 32, 356 F.2d 785 (1965) (delay of 3 months, 13 days; one sale).

---

7. 125 U.S.App.D.C. 118, 368 F.2d at 826.

8. 125 U.S.App.D.C. 120, 368 F.2d at 828, quoting from Hill v. United States, 368

U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

Daniels v. United States, 123 U.S.App. D.C. 127, 357 F.2d 587 (1966) (8-week delay).

Godfrey v. United States, 123 U.S.App. D.C. 219, 358 F.2d 850 (1966) (2-month offense-to-complaint delay reasonable but negligent 2-month delay in arrest calls for retrial on 1 count, dismissal on 2).

Morrison v. United States, 124 U.S. App.D.C. 330, 365 F.2d 521 (1966) (5-month delay; identification of defendant corroborated).

King v. United States, 125 U.S.App. D.C. 213, 369 F.2d 213 (1966) (5½ month delay; identification of defendant corroborated).

Hardy (Ferguson) v. United States, supra.

Furthermore, former Chief Judge Pine of this Court stated the following in his minority report attached to the Report of the President's Commission on Crime in the District of Columbia (1966), at 886:

"On occasion the decision of one division [of the U. S. Court of Appeals] is contrary to the decision of another division.

"On this point several recent examples might be given, as follows:

"In Ross v. United States * * * decided June 30, 1965, a conviction was *reversed* and defendant was released on the ground of delay between the date of the offense and the date of arrest. One of the panel of three dissented.

"In Powell v. United States, [supra] * * * decided August 30, 1965, two months later, by another panel of the Court, a conviction was affirmed notwithstanding a similar delay, one judge dissenting. * * * That the opinions in the two cases are conflicting is acknowledged by the dissenting Judge in the later case, who stated in his dissent that the [*Powell*] opinion 'looks 180 degrees in the opposite direction from the panel opinion' in the earlier (*Ross*) case."

The next year a third panel unanimously wrote:

"It is settled that 'the uncorroborated testimony of a narcotics agent is sufficient to support a conviction for violation of the narcotics laws.' Wilson v. United States, 118 U.S.App.D.C. 319, 320, 335 F.2d 982, 983 (1963). No authoritative utterance of this court is to the contrary." Morrison v. United States, 124 U.S.App.D.C. 330, 332, 365 F.2d 521, 523 (1966).

The only case purporting to apply the *Ross* doctrine which reversed a narcotics conviction is Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214 (1966), in which there were three separate opinions. Adopting the premise shared by Judges Burger and McGowan, that "a delay of four months is not so unreasonable as to warrant reversal absent special circumstances," 125 U.S.App.D.C. 195, 370 F.2d at 217, 221, Chief Judge Bazelon in voting for reversal emphasized what he considered defects in the identification of the defendant by the undercover officer prior to trial. Judge Bazelon's opinion has been criticized for departing from the intent and reasoning of *Ross* and unduly hampering law enforcement. Case Note, 80 Harv.L.Rev. 1361 (1967).

Judges McGowan and Burger held that the crucial determination was the degree of prejudice to the defendant. Judge McGowan found prejudice in *Woody* because of (1) defendant's inability to recall the day of single offense; (2) the death of a potential witness between offense and arrest; and (3) the unavailability of a supposed eye-witness to the crime who would have contradicted the officer's testimony. Judge Burger found no unreasonable prejudice.

In the present case, however, (1) petitioner Gordan does not allege any inability to recall the days on which the three offenses occurred; (2) the potential defense witness, Charles Rogers, would have testified not to a defense of mistaken identity but to a defense of entrap-

ment to two of the three offenses;[9] and (3) a person alleged by the government to be an eye-witness did in fact testify for the defendant at the trial and "categorically and materially controverted" the officer's testimony. Gordan v. United States, 112 U.S.App.D.C. 33, 34, 299 F.2d 117, 118 (1962). Thus petitioner cannot rely on the individual *Woody* opinions to argue for the continued vitality of *Ross*. At most, *Woody* indicates that the *Ross* doctrine "does not yet rest on a firm analytical base," 80 Harv. L.Rev. 1361, 1363 (1967) further demonstrating the inappropriateness of petitioner's request for retroactive application of *Ross*.

■ In summary, this Court's ruling against the retroactive application of Ross v. United States on collateral attack rests upon these grounds: (1) The *Ross* decision does not meet the Supreme Court's broadest test for retroactivity of Constitutional doctrines, that the new rule critically alter the trial process (See Stovall v. Denno, supra); (2) The purpose of the *Ross* rule would not be served by retrospective application; (3) At the time of petitioner's conviction, the police procedure relied on existing law; (4) Retroactivity would burden the Court with numerous spurious claims; (5) The decision in *Ross* derives not from the Constitution but from the supervisory powers of the Court of Appeals of this jurisdiction; (6) A claim based on *Ross* is not cognizable on collateral attack; (7) *Ross* reflects the judgment of one division of the Court of Appeals which has been consistently distinguished in order to affirm narcotics convictions, and therefore does not present an appropriate case for retroactivity.

## APPLICATION OF BRADY v. MARYLAND

■ Petitioner's second contention, which his counsel has described as of minor importance in comparison with his *Ross* argument, is based upon Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963). In *Brady* the Supreme Court ruled that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment * * *." 373 U.S. at 87, 83 S.Ct. at 1196. Petitioner charges that during his 1961 trial the Government failed "to disclose to the defense the existence and whereabouts of the only other alleged eyewitness (to one of the transactions) Oliver Hughes."

Petitioner states that he could not have raised this objection at trial "under the state of law then existing." This is incorrect. The *Brady* decision followed Gordan's trial, but eleven years earlier the U. S. Court of Appeals of this Circuit had emphasized:

" * * * the necessity of disclosure by the prosecution of evidence that may reasonably be considered admissible and useful to the defense. When there is substantial room for doubt, the prosecution is not to decide for the court what is admissible or for the defense what is useful." Griffin v. United States, 87 U.S.App.D.C. 172, 183 F.2d 990, 993 (1950), remanded from the Supreme Court on this issue, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993 (1949).

The "normal and customary" method of correcting trial defects, "even as to constitutional questions," is on appeal, Thornton v. United States, supra, 368 F.2d at 825. However, in view of the reasons cited below, this Court does not base its ruling on petitioner's failure to raise this issue at trial, on motion for new trial, or on appeal.

In fact, petitioner's case does not fall within the *Brady* doctrine because petitioner can show only the most tenuous connection between the alleged suppres-

---

9. See ¶ 9(f) of Gordan's Petition, C.A. No. 606–67; Defendant's affidavit in support of motion for issuance of subpoena for Charles Rogers, dated Jan. 16, 1961, Crim. No. 1041–60; Joint Appendix in Gordan v. United States, supra, pp. 5, 7, 8, 13.

sion and any prejudice to the defendant that might have been caused by it. Petitioner argues as follows: the government did not disclose the existence of Hughes before the start of the trial; as a result, defense counsel had only a "limited and hurried" chance to interview Hughes before calling him to testify for the defendant; as a result, counsel's direct examination of Hughes was "maladroit"; as a result, the government was able to introduce certain testimony to impeach Hughes; and as a final result, the jury disbelieved Hughes' testimony and therefore failed to discredit all the testimony of the undercover officer (Ronald Joy), whom Hughes had been called to impeach.

Absent the suppression, petitioner speculates, counsel would have interviewed Hughes for a longer period of time; counsel would not on direct examination have asked any questions, nor would Hughes have volunteered any response, which would have discredited him in the jury's mind; no impeaching evidence would have been admitted; the jury would have believed Hughes' testimony concerning one offense; and as a final result, the jury would have rejected all the testimony of the officer as to all three offenses. The failure of the government to reveal the existence and location of Hughes cannot, by such farfetched speculation, be converted into a claim of prejudice requiring relief under *Brady*.

Moreover, during the first minutes of testimony on the first day of Gordan's trial, his attorney learned of the existence of Hughes, and during the luncheon recess he discovered Hughes in the Courthouse and interviewed him. If counsel "actually knew the facts withheld," petitioner "cannot now seek relief on the basis of the government's failure to disclose these same facts." Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287, 291 n. 11 (1966). Furthermore, defense counsel did not ask for an extension of the luncheon recess to interview Hughes for a longer period. Counsel called Hughes in the afternoon session of the first day of trial, following the testimony of two government witnesses; he did not request a continuance until the next morning to interview Hughes at greater length. At the hearing on petitioner's motion, held on June 30, 1967, trial counsel (George W. Shadoan, Esq.) admitted that if he had asked for an extension of the luncheon recess or even a continuance until the next day in order to interview Hughes at longer length, the Court would have granted his request.

In light of the factors outlined above, this Court denies petitioner relief based upon Brady v. State of Maryland.