**UNITED STATES of America,
Plaintiff,**

v.

**Paul Dwain BAILLIE, Defendant.**

**Crim. No. 12513.**

United States District Court,
D. Hawaii.

Aug. 25, 1970.

Robert K. Fukuda, U. S. Atty., Harold M. Fong, Asst. U. S. Atty., Honolulu, Hawaii, for plaintiff.

Brook Hart, Public Defender, Honolulu, Hawaii, for defendant.

## DECISION ON MOTION TO DISMISS

PENCE, Chief Judge.

The defendant, Paul Baillie, has moved to dismiss the indictment against him because of delay in returning his indictment and in bringing his case to trial. Baillie is charged in six counts with transactions involving marijuana, in violation of Title 26, U.S.C., §§ 4742(a) and 4744(a) (1), two counts upon a transaction on February 25, 1969, and the other four counts upon two transactions on March 29, 1969. The sales were made to an undercover officer of the Honolulu Police Department. The undercover officer surfaced in early August, 1969, and on August 19, 1969, a little under five months from the date of the last alleged sale, the indictment against Baillie was returned.

In the meantime Baillie had left Honolulu for California, but the Honolulu officers did not hear of this until mid-September. He was arrested October 30, 1969, in Los Angeles and, with counsel assisting, was arraigned the following day. The indictment as well as a Rule 20 plea was discussed with counsel but not used by defendant. Released on bail, Baillie voluntarily, and without notifying the government or any court, returned to Hawaii around the end of November or early December, 1969, but making no attempt to contact either the court or the United States Attorney, passively stood by in Honolulu waiting for trial on the charges against him. It was not until May 1, 1970, that he was notified, by mail, to appear in this court on May 11, 1970.

At the hearing on defendant's motion, defendant called the undercover police officer, LaBoy, apparently to test his recollection regarding his transactions with Baillie. LaBoy testified that he did have recollection, independently of his notes, of the alleged buys from Baillie; and further, that there were not just three contacts between Baillie and himself as charged, but there was also an additional buy from Baillie occurring April 26, 1969, with which he is not now charged. LaBoy also testified that even after the April contact, he continued to try to identify the source of Baillie's marijuana, all the while working undercover.

Baillie testified that he could not remember his activities on February 25 and March 29, 1969, and that he could not now find a number of people, whose names he listed, who might be able to establish alibis for him. From LaBoy's testimony, however, as to just who was present at the four contacts, it appeared that none of these missing potential witnesses were present at the time of any of the alleged sales of marijuana.

It is well settled that the right to a speedy trial under the Sixth

Amendment and Rule 48(b), F.R.Crim. P., does not arise until a formal charge or indictment is lodged.[1] Thereafter, if it is charged that delay in bringing the case to trial is the fault of the government, and that the defendant has been actually prejudiced thereby, the burden, of course, is upon the government to justify that delay. Mere lapse of time, between indictment and trial, is not enough to establish denial of a speedy trial.[2] As was pointed out in *Ewell* (n. 2):

" 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950. 'Whether the delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041." 383 U.S. at 120, 86 S.Ct. at 776.

■ Here, the total elapsed time from return of the indictment against Baillie and the date of the instant hearing was but 12 months. If, however, the defendant can show that the delay was improperly motivated,[3] or oppressive,[4] and that he was prejudiced thereby, he is entitled to a dismissal.

■ The evidence here shows that Baillie had left Hawaii before the indictments were returned and that the government spent the first two and a half months thereafter trying to locate him. After his arrest and arraignment on the mainland Baillie returned to Honolulu in late November or early December, 1969. From that time until April 30, 1970, when he was served with a summons to come to this court to plead to the indictment, he did nothing to notify the United States Attorney of his presence in Honolulu nor to attempt to start the proceedings moving.

No showing of purposeful or oppressive delay has been made. Nevertheless, Baillie maintains that he has been unconscionably prejudiced in that, because of the lapse of time from the dates of the alleged offenses until he was (a) indicted (six months), and (b) arrested (eight months), and (c) that he was not arraigned for seven months thereafter (or a total of about fifteen months), he could not recall [5] as of June 1970 the details of his "whereabouts or activities on the date in question", and that he believed "that a number of potential witnesses who might be able to help" in his "defense are no longer available due to the passage of time." [6]

From LaBoy's testimony it appeared that the offenses charged took place in and around the Islander Hotel in Waiki-

1. United States v. Snyder, 429 F.2d 1242 (9 Cir. July 16, 1970) ; Benson v. United States, 402 F.2d 576 (9 Cir. 1968) ; D'Aquino v. United States, 192 F.2d 338 (9 Cir. 1951).

2. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966) (19 mo.) ; United States v. Penland, 429 F.2d 9 (9 Cir. July 1, 1970) (17 mo.) ; Hodges v. United States, 408 F.2d 543 (8 Cir. 1969) (18 mo.) ; Mull v. United States, 402 F.2d 571 (9 Cir. 1968) (15 mo.) ; York v. United States, 389 F.2d 761 (9 Cir. 1968) (10 mo.) ; Fleming v. United States, 378 F.2d 502 (1 Cir. 1967) (11 mo.) ; Moser v. United States, 381 F.2d 363 (9 Cir. 1967) (22 mo.).

3. United States v. Provoo, 17 F.R.D. 183, 201 (D.Md.1955), aff'd mem. 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955) ; United States v. McWilliams, 82 U.S.App. D.C. 259, 163 F.2d 695 (1947).

4. Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (May 25, 1970).

5. Baillie's affidavit of June 4, 1970, in support of his Motion to Dismiss.

6. *Id.* at 4.

ki. From Baillie's testimony it appeared that none of his nine potential witnesses were associated with any of his activities around that hotel during the period involved.

From his testimony, this court could but conclude that Baillie is a young man of above average I.Q. His memory in July 1970 of events in the Spring of 1969 was full and detailed—except as it concerned any connection with marijuana. In that area, memory failed completely. So completely, in fact, that this court placed little credence upon his claimed absence of recollection.

While Baillie's affidavit (n. 5) concerned itself with his memory in June 1970, Baillie's concern should actually have been raised on October 29, 1969, when he was arrested in Los Angeles. His detailed memory in July 1970 of so many events of 1969, leaves great doubt that he would have had in October of 1969 an opaque memory of his actions in February and March of 1969.

This court finds that Baillie has failed to show such unconscionable prejudice as would warrant dismissal.

Baillie, nevertheless, urges that the totality of events here mandates dismissal under the authority of Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965). *Ross*, however, is now a badly eroded and puny precedent, even in the D.C. Circuit. It was a 2–1 opinion and even the majority inferentially approved an arrest four months after the violation occurred, but thought seven months too long. The majority also criticized the complete failure of independent recollection on the part of the undercover officer, as well as lack of corroboration. As pointed out in the dissent, however, the majority were "judicially legislating", in the face of D.C. precedent to the contrary, in order to show their disapproval of police methods of handling undercover narcotic investigations in the District of Columbia, and to implement what the majority conceived to be the court's function of "su-

pervisory responsibility for criminal proceedings" in that District.[7]

After *Ross* came Bey v. United States, 121 U.S.App.D.C. 337, 350 F.2d 467 (1965), where the court sustained convictions on the uncorroborated testimony of an undercover agent where the agent "testified that while he used his notebook of transactions to refresh his memory as to dates and the amount of money involved, he could remember the details of the transactions independently." Three and one-half months passed between the last transaction and the swearing out of the arrest warrants. The court stated: "[W]e cannot conclude that this prosecution had dimensions as slender as *Ross*." (Footnote omitted.)

After that came Powell v. United States, 122 U.S.App.D.C. 229, 352 F.2d 705 (1965), where a five months delay between violation and indictment was there not found excessive when there was legitimate reason for the delay. *Powell*, moreover, involved an undercover officer who had "made cases" upon 102 narcotics offenders. The majority in *Powell* criticized *Ross* for demanding corroboration, when an en banc review of the problem in Morgan v. United States, 115 U.S.App.D.C. 310, 319 F.2d 711 (1963), cert. denied, 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114, and Wilson v. United States, 118 U.S.App.D.C. 319, 335 F.2d 982 (1964), approved the rule that "the uncorroborated testimony of a narcotics agent is sufficient to support conviction for violation of the narcotic laws." 335 F.2d at 983.

Then in Morrison v. United States, 124 U.S.App.D.C. 330, 365 F.2d 521 (1966), with Circuit Judge (now Chief Justice) Burger writing the opinion, the court flatly stated:

"It is settled that 'the uncorroborated testimony of a narcotics agent is sufficient to support conviction for violation of the narcotics laws.' Wilson v. United States, * * * 335 F.2d 982, 983. No authoritative utterance of

7. See United States v. Sanchez, 361 F.2d 824 (2 Cir. 1966).

this court is to the contrary." 365 F. 2d at 523.

After *Morrison*, the court in Dancy v. United States, 129 U.S.App.D.C. 413, 395 F.2d 636 (D.C.Cir. 1968), fully discussed the "legislative" aspects and motives behind *Ross*:

> "We regarded *Ross* more as a challenge to the police than as a license—a challenge to exhibit some awareness of the very real dangers of misidentification lurking in the narcotics undercover agent practice, and to endeavor consciously to devise methods and procedures which would reduce those dangers as much as possible consistent with effective law enforcement." 395 F.2d at 638.[8]

◼◼ The totality of circumstances surrounding Baillie's case, as shown at the instant hearing, more than justify all of the delay periods involved. While corroboration is not demanded,[9] corroboration of LaBoy's activities, more than sufficient to satisfy even the criteria of the majority in *Ross*, was made out. Defendant has failed to show even actual prejudice.[10]

Baillie's Motion to Dismiss is denied.

---

8. *Dancy* impliedly approves of the exact method used by the Honolulu police in Baillie's case.

> "A conscious effort to engineer the undercover system in order to strengthen its reliability would undoubtedly turn up a number of useful devices not necessarily involving a shortening of the period of underground service. Multiple transactions can, for example, be very helpful in corroborating identification even if less than all become the basis of punishment." 395 F.2d at 639, n. 3.

9. From the preceding analysis of *Ross*, and the law on "corroboration" in a case involving sale of narcotics to an undercover agent, it is manifest that when the panel in Estrella v. United States, 429 F.2d 397 (9 Cir. July 10, 1970), gratuitously opined:

> "Where the error is plain, however, the issue could be reached on appeal. Plain error in this context would have required that defendant establish a prima facie

case for the exercise of the *Ross* doctrine which was based upon the unfairness of allowing, after an undue delay, a conviction to be based upon the uncorroborated testimony of a single officer who testified from his notes made at the time of the alleged crime without independent recollection. Here, the informant testified from independent recollection, (R.T. at 87) ; recalled substantial details tending to show his credibility, *and the informant's testimony was substantially corroborated.* No case under *Ross* was made, no plain error allows review in this court when the issue was not raised in the trial court" (429 F. 2d at p. 399) (emphasis added),

*Ross* had not been fully briefed for, nor had it been considered in depth by, the panel. This court, therefore, cannot accept the *Estrella* dicta as mandating "corroboration" in the Ninth Circuit.

10. *Cf.* United States v. Penland, 429 F.2d 9 (9 Cir. July 1, 1970).